GOODNOW v. MOULTON ET AL.

1. **Taxes:** RECOVERY WHEN PAID UNDER BELIEF OF OWNERSHIP. The Iowa Homestead Company having paid taxes for a number of years upon certain lands deeded to it by the Dubuque & Sioux City Railroad Company, under the belief that it was the owner of them, but the title to which was finally decided to be in defendant, who, pending the litigation, failed to have them assessed in his name, it was *held* that the homestead company was entitled to recover the amount of such taxes from the owner.

2. ———: ———. The case distinguished from *Garrigan v. Knight*, 47 Iowa, 525.

*Appeal from Webster Circuit Court.*

WEDNESDAY, SEPTEMBER 17.

ACTION in equity. A decree was entered in the Circuit Court dismissing the petition, and plaintiff appeals.

*George Crane* and *John Doud, Jr.,* for appellant.

*Clark & Connor,* for appellees.

SEEVERS, J.—In 1863 the Iowa Homestead Company purchased, and there was conveyed to said company by the Dubuque & Sioux City Railroad Company, certain lands described in the petition. Other lands were embraced in the same conveyance, which purported to convey the fee simple title. In 1864, and every year thereafter up to and including 1871, the homestead company

paid the taxes levied on said land, which, during the period aforesaid, was not in the actual occupation of any one.

The title of said company failed, as hereafter stated, and this action is brought to recover of the defendant Moulton, the owner of said lands, the taxes so paid—the plaintiff having succeeded to all the rights of said company. An accounting is asked, and a decree that the amount found due be made a charge on the land. General relief is also asked.

When the taxes were paid it was believed by said company it was the owner of said lands, under the act of Congress known as the "railroad grant." The source of the defendants' title is the act of Congress granting lands in aid of the improvement of the Des Moines river.

From 1859, or before that time, up to December, 1872, the title to the land described in the petition was in dispute between parties claiming under said grants. During the greater portion, if not all of said period, the title was being litigated by those under whom the parties claim, or, more correctly speaking, there were actions pending in which the title to other lands than those described in the petition was being litigated.

In December, 1872, it was determined in *Homestead Company v. Valley Railroad*, 17 Wall., 153, that the parties claiming under the act of Congress in aid of the improvement of the Des Moines river owned the legal title to said lands. This decision conclusively and finally determined that the homestead company did not own the lands described in the petition at the time the taxes were paid, but that the defendant Moulton was the owner. For a more full and complete history of the several acts of Congress, the legislation of the State, and the litigation resulting therefrom, see the above cited case; and *The Dubuque & Pacific R. Co. v. Litchfield*, 23 How., 66; *Wolcott v. Des Moines Co.*, 5 Wall., 681, should also be consulted.

The taxes were paid "on the 28th day of February in each year, without any request from defendant Moulton, and, by

mistake as to the ownership of said lands, in good faith, under the belief of ownership."

The lands were assessed to "unknown owners." The defendant Moulton has never paid or offered to pay any portion of said taxes. No objection is made to the form of the action.

As to the questions involved we have to say:

I. It is regarded as well settled by authority that the general rule is one person cannot make another his debtor by paying the debt of the latter without his request or assent, but it is believed to be equally well settled that a request or assent may be inferred under some circumstances: as if "one person see another at work in his field, and do not forbid him, it is evidence of assent, and he will be holden to pay the value of the labor. Sometimes the jury may infer a previous request, even contrary to the fact, on the ground of a legal obligation alone." 2 Greenleaf Ev., § 108.

Where one pays the funeral expenses of the deceased wife of another, the latter being beyond the seas, a previous request will be inferred, because of the legal obligation resting on the husband. *Jenkins v. Tucker*, 1 H. Bla., 90.

*Nichol v. Allen*, 3 Carrington & Payne, 35, was an action to recover for boarding the defendant's child. There was no evidence of a request or promise to pay. But the defendant had knowledge the child was boarding with the plaintiff, and it was said by Lord Tenterden, Ch. J., that "there is not only a moral but a legal obligation on the defendant to maintain his child; he knows where she is, and expresses no dissent, and does not take her away. There is a legal obligation made out, if it is shown she is maintained in the plaintiff's house, and he knows it; and it lies on the defendant to show that she is there against his consent, or that he has refused to maintain her any longer at his expense."

Where one person is compelled to pay money which another is under a legal obligation to pay, the one so paying may recover of the person legally bound. In such a case a previous request will be inferred. *Pownal v. Ferrand*, 6 B. & C.,

439; *Exall v. Partridge*, 87 R., 308; *Bailey v. Bussing*, 28 Conn., 453.

If one person in good faith, because of a statutory obligation resting on him, or because public policy so requires, pays money another is under a legal obligation to pay, a previous request, we think, might well be inferred if he had knowledge of the payment at the time it was made; or, if he did not have knowledge until afterward, and there were a series of payments made from time to time, an assent should be presumed. As the homestead company was not, in fact, the owner, it was not, under ordinary circumstances, in a strict and technical sense bound or under obligation to pay the taxes; but under the peculiar circumstances of this case we think it was the duty of said company, and public policy required it, to pay said taxes, and Moulton should not be permitted to say otherwise.

Moulton knew, or was bound to know, the title to the lands was in dispute and being actually litigated for a series of years, and that the construction of the acts of Congress and the legislation of the State were involved. He failed to have the lands assessed in his name. He was bound to know the lands were taxable, and that the taxes had been paid by some one. Ordinary diligence would have developed the fact the payments were not made officiously or by an intermeddler, but by one clothed with an apparent title.

For the purpose of ascertaining whether the taxes were paid officiously, and whether it was the duty of the homestead company to pay the taxes, a brief glance at the litigation involving the title to these lands, and its effect, is requisite.

The case of *The Dubuque & Pacific R. Co. v. Litchfield* was decided in 1859, and its tendency was to show that the said lands passed under the railroad grant. At least it was then held said lands were not embraced in the grant made in aid of the improvement of the Des Moines river. The inference

from this decision could be fairly, and we have no doubt was, indulged, that the lands passed under the railroad grant.

This decision was followed, in 1866, by the Wolcott case. This action was between parties, both of whom claimed under the river grant, and it was held that the title to such lands had passed thereunder. But as no one claiming under the railroad grant was a party to the action, it cannot be said the decision was of any bearing force as to them.

It was not until 1872 that there was an authoritative decision adverse to those claiming under the railroad grant. Under these circumstances the homestead company was fully justified in believing that it was clothed with the legal title. By no amount of care and diligence could it have arrived at any other conclusion. The title was in great doubt, and nothing under the circumstances, short of a decision of the Supreme Court of the United States, could reasonably be expected to settle the question. Until such decision was made it was the duty of parties claiming under both these grants to pay the taxes. Either was fully justified in so doing. The circumstances are peculiar and anomalous, and demand the establishment, or recognition, of a rule consonant with law, equity, justice and common honesty. That the defendant should reimburse the plaintiff for the taxes paid there can be no doubt, unless there is some well recognized principle which forbids it. We do not believe there is any such. The foregoing views do not conflict with *Garrigan v. Knight*, 47 Iowa 525. In that case the plaintiff purchased the land direct from the general government. About his title there could not be any dispute. This the defendant was bound to know. The latter, in fact, had no title, and this he was bound to know. Any one having ordinary knowledge of law could and would have so advised him. There was neither dispute nor litigation as to the title. The defendant, without inquiry or the use of ordinary diligence, paid the taxes. The payments, under such circumstances, were made officiously and by an intermeddler.

Something is said in *Homestead Company v. Valley Railroad*, before cited, which indicates that taxes paid by the plaintiff in that action could not be recovered. If such point was in the case and really determined, it would be an authority in this action. That action was brought to determine the question of title, and we have looked in vain for anything in the statement of the questions involved, or the opinion of the court, which tends to show with any degree of certainty that the question of the right of the plaintiff to recover the taxes paid was in the case. We infer, from what is said by the reporter, that the matter of taxes was only so far involved as the same in a court of equity would affect or bear upon the question of title.

II. The statute of limitations was pleaded in bar of a recovery. If an action accrued at the time the several payments were made then all are barred except the last payment. On the other hand, if the cause of action did not accrue until it was authoritatively determined the homestead company did not have title, then none are barred.

This question was not determined below and has not been argued by counsel for appellant, and but briefly by counsel for the appellee. Under these circumstances no ruling should be now made as to this question.

The decree below will be reversed and the cause remanded, with directions to the Circuit Court to ascertain and determine the amount the plaintiff is entitled to recover, and to enter a decree making the same a lien on the land described in the petition, and providing in some proper manner for its enforcement.

REVERSED.