Bowen v. Duffie et al.

FRIDAY, APRIL 24.

BOWEN v. DUFFIE ET AL.

1. **Real Estate:** ACTION TO QUIET TITLE: EVIDENCE OF TITLE. Where plaintiff in an action to quiet her title to land introduced a deed from one L. to her, the signature to which was neither proved by a proper acknowledgment nor otherwise, but she and another, as witnesses, testified to the purchase of the land by her of L., *held* that this was sufficient evidence of her title to justify the court in granting her the relief prayed for, as against defendants, if they had no rights of any kind in the land.

2. **Tax Title:** ACTION TO QUIET: JUDGMENT IN STATE COURT: NEW TRIAL: REMOVAL TO FEDERAL COURT: ABANDONMENT: REFUNDING

OF TAXES: ESTOPPEL. D., upon default, on notice by publication only, procured in the state court a decree quieting his tax title. Afterwards a new trial was granted to L., one of the defendants in the action, and he had the cause removed to the federal court. Here D. filed a new petition against L. alone, which was held bad on demurrer; whereupon D. informed L. that he would prosecute the action no farther, and the cause was, by agreement, dismissed. D. afterwards, on the ground that his tax title was void, procured from the county a refunding of the taxes which he had paid upon the land. *Held* that these facts constituted an abandonment by D. of his tax title, and that he could not afterwards, as against L.'s grantee, be heard to assert title by virtue of the judgment in his favor in the state court.

3. ———: ON SALE FOR TAXES PAID AND REFUNDED: RIGHTS OF INTERVENING PURCHASER. In the case last named, D. paid the taxes on the land in March. Plaintiff purchased of L. in the following July. Afterwards the county refunded to D. the taxes paid by him, and took from him an assignment of his claim in or against the land, or those interested in the same, and then sold the land to C. for these taxes, as if they had never been paid. *Held* that the sale was not valid as against plaintiff, and that neither the county nor C. was entitled to a lien on the land for such taxes, in the absence of proof of such facts as would bring the case within the principle of *Goodnow v. Moulton*, 51 Iowa, 555, and subsequent like cases.

*Appeal from Sac Circuit Court.*

FRIDAY, APRIL 24.

THE plaintiff, Fannie Bowen, brings this action to set aside a tax sale to certain land in Sac county, and to quiet her title to the land. The court set aside the tax sale as to an undivided half of the land, and quieted plaintiff's title to such half. The defendants appeal.

*S. M. Elwood* and *C. D. Goldsmith*, for appellants.

*M. D. O'Connell*, for appellee.

ADAMS, J.—The sale in question was made to the defendant, Condron, and was for taxes of 1875, 1876, 1877 and 1878. The court set aside the sale, but found that the plaintiff never owned more than an undivided half of the premises, and quieted

her title to such half; and of the finding of the court in this respect the plaintiff makes no complaint. The defendant Duffie claims to own the premises by reason of a tax deed executed prior to the sale in question. The defendant Condron denies the validity of Duffie's deed, and insists upon the validity of the sale to him. They both insist, however, that, whatever the court may think of the validity of Duffie's deed or the validity of the tax sale to Condron, the plaintiff must fail, because she has failed to prove that she ever owned any interest in the land. The claim of the defendant Sac county will be stated hereafter.

I. The question as to plaintiff's proof of ownership lies upon the threshold, and we will proceed to consider it first.

1. REAL estate: action to quiet title: evidence of title.

She claims to have derived title to the property by deed from Langsdale. It is not denied by defendants that Langsdale was at one time the owner of an undivided half, but it is said that the alleged conveyance from him to plaintiff is not proved. A deed of the land was introduced, running to the plaintiff, and bearing the name of Langsdale as grantor; but it is said that it was not proved that the signature was genuine, either by extrinsic evidence or by proper acknowledgment of the deed. It may be conceded that the deed was not properly acknowledged, but we find in the evidence the testimony of the plaintiff, referring to the deed in these words: "The third of which in date is a deed from Joshua M. W. Langsdale and his wife to myself. I became the owner of said land by purchase from J. M. W. Langsdale and wife." One Wray, the plaintiff's brother-in-law, testified as follows: "I have known Fannie Bowen, plaintiff in this suit, for twenty years. She paid J. M. W. Langsdale $1,800 for said land, in money." This evidence appears to be wholly unrebutted, and was sufficient, we think, to show that the plaintiff was, at least, the equitable owner, and, as against the defendants, if they had no right of any kind in the land, was entitled to the relief which was accorded her.

II.  We come next to the question as to the validity of the tax deed executed to Duffie.   Its invalidity is predicated upon the fact that before the deed became due redemption was made from the tax sale.   Duffie admits in his ·answer that redemption was made.   It seems to have been thought at one time that the redemption was not valid, and that, we infer, is the reason that a tax deed was executed to Duffie, notwithstanding the redemption, but no question as to the validity of the redemption is raised now.   Duffie's position is that, while it is true that the land·was redeemed from the sale, and the deed was wrongfully issued, yet (as it appears) an action was brought by him against the parties in interest, in which he obtained an adjudication establishing his title, and he insists that the adjudication is still in force.

*2. TAX title: action to quiet: judgment in state court: new trial: removal to federal court: abandonment: refunding of taxes: estoppel.*

The fact appears to be that in the action brought by Duffie the defendants were notified merely by publication.   None of them appeared before judgment; but the principal defendant, Langsdale, appeared afterwards and applied for an order for retrial, which was granted.   We suppose that the application was made, and the order granted, under section 2877 of the Code.   After the order was granted, Langsdale caused the case to be removed to the circuit court of the United States, and Duffie insists that no judgment was rendered in that court, but that the action was dismissed; and his legal proposition is that, if such is the fact, the judgment formerly obtained remains unaffected.   As showing the fact of dismissal, he relies upon a stipulation of counsel introduced in evidence.   As supporting his legal proposition, he relies upon a provision of the section above cited, that " upon the new trial the court may confirm the former judgment, or may modify or set it aside."   He also relies upon *Morton v. Coffin,* 29 Iowa, 235.

While it may be that the United States circuit court did not render a formal judgment setting the former judgment aside in the state court, as perhaps it could not do, it did, we

think, what was, in effect, equivalent to it.   The facts are, as shown by the averments of the petition, the admissions of the answer, and the stipulation, that in the United States circuit court Duffie filed a new petition, setting out the facts upon which he claimed title as against Langsdale in that case; that Langsdale demurred to the petition, and the demurrer was sustained; that Duffie then notified Langsdale that he would prosecute the action no further, and the action was by agreement of parties dismissed.   There is no question but that Duffie accepted the ruling upon the demurrer as disposing of his rights.   If anything more were necessary, this would appear from a petition, filed by Duffie with the board of supervisors of Sac county, asking that the taxes for subsequent years, paid by him, be refunded; and basing his claim upon a statement that the United States circuit court has declared his tax title to be void.   We may add that upon the strength of this statement the amount paid by him was refunded, and which, as we understand, he still retains.   We think that under the circumstances we must treat the ruling of the United States circuit court as he treated it, and as he induced Langsdale and the board of supervisors to treat it; and that is, as a virtual adjudication that his tax title was void.

III.   At the time that Duffie procured the taxes of the subsequent years to be refunded to him, he made a written

3. ———: on sale for taxes paid and refunded: rights of intervening purchaser.

assignment to Sac county of all his claim and right against the land, or those interested in the same.   The county then proceeded to sell the land for these taxes as if they were delinquent, and the defendant, Condron, became the purchaser at the sale.   Sac county and Condron claim in their pleadings that the sale is valid, or, if not, that the taxes constitute a claim against the plaintiff, if she is the owner of the land, and are a lien upon the land; and they pray that, in case the court shall so find, they may have judgment for the amount, with interest, and a decree establishing the same as a lien, and an execution to enforce the

lien by sale. The taxes for the years in question certainly did not appear to be delinquent at the time of the plaintiff's purchase. She made her purchase in July, 1879. The last taxes paid by Duffie were paid in March of that year. So far as the record showed, she certainly had a right to assume that the taxes had been paid, and govern herself accordingly. But it is said that the plaintiff was affected with knowledge, outside of the record, of the circumstances under which Duffie paid the taxes, and should have inferred that the land, notwithstanding the payment, had not in fact been discharged.

We are inclined to think that Duffie paid the taxes in good faith, and under the supposition that he was the owner of the land. Possibly the circumstances were such under which he paid them that he was entitled to recover the same upon an implied contract from the person who was at that time the owner of the land, and if so that he was, as against such person, entitled to a lien upon the land. This court has held that under some circumstances taxes paid by mistake respecting title may be recovered from the person benefited, and as against such person may be declared a lien upon the land. *Goodnow v. Moulton*, 51 Iowa, 555; *Same v. Wells*, 54 Id., 326. But the rule of those cases is not, we think, applicable to this. There is no claim made in argument that these taxes are recoverable from the plaintiff. The most that is claimed is that they are enforceable as a lien. But, to justify us in so holding, we should be obliged to hold that the plaintiff knew, not only that the taxes had been paid by Duffie under a mistake, but that the circumstances were of that peculiar character that the case is brought within the rule of the cases above referred to, and is distinguishable from *Garrigan v. Knight*, 47 Iowa, 525. Now, we have to to say that we are unable to find either of these facts. There is some evidence that one Wray was informed that Duffie paid the taxes under a claim that he was the owner of the land, and it is said that Wray was the plaintiff's agent. But we are unable to find from the evidence that he was. The

most that we can say is that the evidence shows that he was the plaintiff's brother-in-law, and interested himself somewhat in her behalf in making inquiries in regard to the taxes. The evidence falls short of showing that he was her authorized agent.   In our opinion, then, the plaintiff's purchase was not subject to any lien for these taxes, and the decree of the circuit court must be

AFFIRMED.