[No. 3872. Decided July 15, 1901.]

S. T. PACKWOOD, *Respondent,* v. B. F. BRIGGS, *Appellant.*

TAXATION — PAYMENT BY JUDGMENT LIENOR — TAX LIENS.

Laws 1897, p. 175, § 82, which provides that "any person who has a lien, by mortgage or otherwise, upon any real property upon which the taxes have not been paid, may pay such taxes and the interest, penalty and costs thereon," for which he shall have a lien collectible "as a part of and in the same manner as the amount secured by the original lien," is applicable to holders of general judgment liens as well as to holders of specific liens.

SAME — WHEN EQUITABLE LIEN ARISES THROUGH PAYMENT OF TAXES.

Where a judgment creditor in good faith pays the delinquent taxes against his debtor's land, in the belief that he has a lien against the premises, and is protecting himself against a paramount claim, he is entitled to an equitable lien as against a mortgagee for the sums expended for taxes, with interest thereon.

JUDGMENTS—LIEN—REVIVAL.

Under Code Proc., §§ 462, 463, which provide that the lien of a judgment continues for five years from the date of its rendition, and that proceedings to revive the lien may be instituted within six years from the date of judgment, the judgment lien terminates at the expiration of five years from its date of rendition, and becomes inoperative for any purpose unless revived within the succeeding year, when the lien again begins to operate from the date of revivor.

SAME—EXPIRATION OF LIEN PENDING EXECUTION SALE—EFFECT.

An execution sale upon a judgment whose lien has expired is void, even if the execution had been issued prior to the expiration of the lien.

Appeal from Superior Court, Kittitas County.—Hon. John B. Davidson, Judge. Modified.

*E. F. Blaine* and *Wilmon Tucker,* for appellant.

*Graves & Englehart,* for respondent.

The opinion of the court was delivered by

Hadley, J.—S. T. Packwood, respondent here, brought this action below to foreclose a mortgage upon certain real estate situated in Kittitas county. The mortgage was executed by John A. Shoudy and wife on the 28th day of March, 1894, to secure a note of said John A. Shoudy, payable to said Packwood for the sum of $4,000. Said note was of even date with the mortgage and payable one year after date. Before the commencement of this action, $3,000 had been paid upon the note, and the balance of the principal and interest was unpaid. On the same day the mortgage was executed it was filed for record in the auditor's office of Kittitas county. At the time of the execution of the mortgage the said Shoudy was indebted to various persons, and, among others, he was indebted to Dexter Horton and A. A. Denny. Being desirous of securing said Horton and Denny, it was agreed that Shoudy should confess judgment in their favor for the amounts

he was owing them respectively. In pursuance of such understanding, the indebtedness against Shoudy held by Horton and Denny, respectively, was by each of them transferred to B. F. Briggs, who is appellant here, as trustee for both Horton and Denny. Action was instituted by said Briggs against Shoudy upon such indebtedness in the superior court of King county, and such proceedings were had that on the 27th day of March, 1894, judgment was entered against Shoudy for the sum of $26,752.70 and costs. On the 28th day of March, 1894, a transcript of said judgment was duly filed in the office of the clerk of the superior court of Kittitas county. On the 25th day of March, 1899, an execution under said judgment was issued by the clerk of the superior court of Kittitas county, directed to the sheriff of said county, which purported to authorize said sheriff to sell the real estate of Shoudy, the judgment debtor, to satisfy said judgment. Thereafter, on the 6th day of May, 1899, the sheriff made such sale of Shoudy's real estate, including in such sale the lands covered by respondent's mortgage; and said Briggs, the judgment creditor, became the purchaser at said sale. Afterwards, on the 26th day of June, 1899, said Briggs paid taxes upon the property included in the mortgage, and which had been sold to him as aforesaid, and also redeemed said property from a tax sale; the amount paid by him on account of such taxes being $460. It will be observed that the mortgage and transcript of judgment were filed in the proper office of Kittitas county on the same day. It appears that a short time prior to the entry of the judgment and the execution of the mortgage, some conferences were had between Horton, Denny, Packwood, and Shoudy and their representatives, at which the plan of procuring the judgment and mortgage as security for the respective parties was discussed. It is contended by

respondent, Packwood, here that it was then expressly agreed that the mortgage lien should be superior to the lien of the judgment upon the real estate included in the mortgage. This is denied by appellant, Briggs; he contending that it was understood that the judgment lien should be prior. Since the liens were created the same day, it became necessary in the court below, in view of the dispute as to priority, to determine which was the prior lien. The evidence conflicts upon this point, but the court found that it was agreed that the mortgage should be the prior lien. An exception was taken by appellant to this finding, but it is not assigned as error. But if we should assume that the question, upon the finding, is properly before us, we think it was justified by the evidence, and we should not be disposed to disturb it. It must, therefore, be deemed settled that the mortgage lien of respondent is superior to any lien that may exist under the judgment, and the finding and decree of the lower court in that particular are sustained.

The appellant, Briggs, after setting up in his answer the facts concerning payment of taxes as heretofore stated, prays judgment that a lien against the property upon which taxes were paid be decreed in his favor for the amount paid, together with interest thereon from the date of payment. Appellant bases his right to have the taxes so paid by him declared a lien upon the legislative provision found in chapter 71, § 82, p. 175, Session Laws of 1897:

"Any person who has a lien, by mortgage or otherwise, upon any real property upon which the taxes have not been paid, may pay such taxes and the interest, penalty and costs thereon; and the receipt of the county treasurer shall constitute an additional lien on such land, to the amount therein stated; and the amount so paid and the interest thereon, at the rate specified in the mortgage or other in-

strument, shall be collectible with, or as a part of, and in the same manner as the amount secured by, the original lien."

It is contended by respondent that the above provision is intended to apply only to the holder of a lien upon specified real estate, such as a mortgage lien, and that it does not apply to the holder of a general lien such as a judgment lien. We believe, however, that the language of the statute is broad enough to include the holder of any lien. The words are, "Any person who has a lien by mortgage or otherwise upon any real property . . . ." A judgment of the superior court is a lien upon the real estate of the judgment debtor in the county where the judgment is entered, or in which a properly certified transcript of a judgment rendered in another county has been filed. The statute plainly says that a lien created by mortgage "or otherwise" entitles its holder to pay the unpaid taxes and the interest, penalty, and costs, and that the receipt of the county treasurer shall constitute an additional lien for the amount. If, therefore, appellant was the holder of a valid judgment lien against the mortgaged property at the time he paid the delinquent taxes and redeemed from the tax sale, he is entitled, by virtue of the statute, to have the amount paid declared a lien upon the land prior to respondent's mortgage lien. Did appellant hold a valid judgment lien at the time? The judgment was entered on the 27th day of March, 1894, and the taxes were paid on the 26th day of June, 1899. Sections 462 and 463, 2 Hill's Code, provide that the lien of a judgment continues for five years from the date of its rendition, and that proceedings to revive the lien may be instituted within six years from the date of judgment. Appellant's counsel contends that these two sections must be construed to mean that the lien of the judgment continues

for six years from date of judgment, and he therefore con-cludes that the lien of appellant's judgment continued un-til the 27th day of March, 1900. This court recently de-cided against appellant's contention in *Brier v. Traders' National Bank of Spokane,* 24 Wash. 695 (64 Pac. 831). This subject is exhaustively discussed in the opinion in that case, and it is there held that the lien of the judgment expires at the expiration of five years from the date of the judgment, and, while it may be revived at any time within the sixth year, yet after the expiration of the five years the lien is entirely dead until the judgment of revival has been entered. In other words, the revival proceedings have the effect to vivify that which was dead, but pending the time between the expiration of the five years and the judgment of revival there is no lien, and its revival does not relate back to the end of the five year period. It must, there-fore, be held in this case that after the 27th day of March, 1899, appellant had no judgment lien.

It is urged by respondent that the attempted execution sale was void for several reasons, but a discussion of them all is not necessary for the decision of this case. The ex-ecution was void at the time of the attempted sale, for rea-sons heretofore stated. There being no lien in existence, there could have been no authority for the sale in any ex-ecution that might have been issued. It is true, this execu-tion was issued a few days before the expiration of the five year period; but the lien itself, the authority for any execution and sale, was dead long before the attempted sale. It follows that, if appellant is entitled to relief on account of the taxes paid, it must be based upon equitable grounds, considered with reference to the relations of the parties to the subject matter. It must be conceded that appellant paid the taxes in good faith, relying upon what he believed to be his lien as authority for it. It cannot be assumed that

the payment was made as that of a mere volunteer, or as that of one meddling with something in which he knew he had no interest. The evidence shows that the payment was made in the honest belief that appellant held a valid lien upon the land, and he was only seeking to prevent the paramount lien of the taxes from destroying the value of what he believed to be his own lien against the lands. The decision in *Brier v. Traders' National Bank, supra,* had not been rendered at that time; and as far as any judicial interpretation of the statute relating to the continuation of judgment liens pending the year in which a revival must be had was concerned, it may be said to have been an open question at that time.

In *Fiacre v. Chapman,* 32 N. J. Eq. 463, a second mort-gagee redeemed from certain tax sales which the complaint alleged were invalid, and this was not denied; but in an action to foreclose the first mortgage, to which the second mortgagee was a party, he sought to recover what he had paid. The court, at pages 464 and 465 of the opinion, says:

"But while the defendant has not established a para-mount title under the sales (indeed, he claims none, but only a lien), he has shown that he has paid, by way of re-demption, taxes assessed upon the property, and which, under the charter, were a prior lien to the complainant's mortgage, and for non-payment whereof the property might have been sold, and under the sale a title superior to the complainant's mortgage given. . . . But it is urged, on behalf of the complainant, that though the taxes were a lien on the land paramount to the first mortgage, yet the lien is discharged by the payment. If it be conceded that the lien was discharged by the payments, that will not de-prive Mr. Mitchell of his right of reimbursement for the payments out of the property in advance of the lien of the complainant's mortgage. They were in no sense volun-tary. It is proved that he made them, relying on the lien for his indemnity. He, indeed, was not compelled to make

them by any duty he owed the complainant, but, in order to relieve the property from the paramount lien of the taxes and protect it for himself against the consequences thereof, he was constrained to make them. Having thus preserved the property to the complainant as well as himself, he is entitled to equitable subrogation, . . . ."

In *Merrill v. Tobin,* 82 Iowa, 529 (48 N. W. 1044), the plaintiff entered certain lands, through an agent, upon county land warrants, and received from the United States a patent therefor. The land was not fenced, and was wild, unbroken, and uncultivated prairie. The plaintiff's title was defeated in the action by the defendants' showing possession in themselves; the acts of possession being such as the cutting of hay and stacking it upon the land, and such other acts of dominion over it as it was susceptible of in its wild state. For eighteen years the plaintiff paid the taxes upon the land and during all that time was a nonresident of the state, and did not visit the land and had no knowledge of any adverse claim thereto or of any one being in possession thereof until at the end of that time, when he immediately commenced an action to quiet his title thereto. It was held that the plaintiff was justified in the payment of the taxes on the land, since the evidence showed that such payment was made in good faith. It was also held that, since the present owners of the land acquired title thereto with full knowledge of the facts relating to the payment of the taxes thereon by the plaintiff, the plaintiff was entitled to have the taxes so paid established as a lien upon the land. To the same effect are the following Iowa cases: *Goodnow v. Moulton,* 51 Iowa, 555 (2 N. W. 395); *Goodnow v. Litchfield,* 63 Iowa, 275 (19 N. W. 226); *Thompson v. Savage,* 47 Iowa, 522. See, also, *Schaefer v. Causey,* 8 Mo. App. 142.

In *Parks v. Watson,* 20 Fed. 764, it is held that the state has a lien upon all lands until all taxes are paid, and that,

when taxes are paid by others than the owner of the land, the state must be considered as transferring its lien to such party, and the only way that equity should relieve the owner from the burden of such lien is by payment. Thus, it is the tendency of the courts to see that those who have in good faith advanced the money to pay public taxes are protected. This is equitable and just. No one is injured thereby. The tax lien is paramount, and payment of the taxes inures to the benefit of both the owner and lien holder. So in this case, the taxes paid by appellant inured to the benefit of respondent as mortgagee. It would be unconscionable that respondent should reap the benefit of such payment without making any compensation therefor. It must therefore be held that appellant is entitled to have the amount of taxes he paid, with interest thereon from date of payment, decreed to be a lien upon the lands for which payment was made, and such lien shall be superior to the mortgage lien of respondent. In all other particulars the judgment of the lower court is affirmed, and the cause is remanded, with instructions to the lower court to modify the decree as herein indicated, and provide that the proceeds of sale under the decree shall be applied— First, to the payment of appellant's lien for taxes; and, second, to the payment of respondent's mortgage lien.

REAVIS, C. J., and FULLERTON, ANDERS, DUNBAR, MOUNT and WHITE, JJ., concur.