| 32 | 307 |
| 41 | 397 |

[No. 4628.   Decided July 20, 1903.]

ROTHCHILD BROS., *Appellant,* v. NICHOLAS ROLLINGER *et ux., Respondents.*

IRRIGATION — ORGANIZATION OF DISTRICT — PETITION.

Bal. Code, § 4166, providing for the organization of an irrigation district upon the petition of "fifty or a majority of holders of title," does not require fifty in any event, but a petition by forty-two freeholders, constituting more than a majority, is sufficient.

SAME — ASSESSMENTS — TAX SALE.

Bal. Code, § 4192, regulating the sale of lands for delinquent irrigation assessments, does not require the officer making the

sale to designate in writing any particular portion which he proposes to sell, but it is sufficient if the record recites that he designated the portions at the time of sale.

SAME — INADEQUACY OF PRICE.

Inadequacy of price is not a valid objection to the sale of land for taxes.

TAX DEED — RECORDING — BONA FIDE PURCHASER — LIEN FOR TAXES PAID.

The owner of land sold for special irrigation taxes several years after he had acquired title cannot object that the tax deed was not recorded, and that he was an innocent purchaser by reason of subsequently paying general taxes; but he has a lien on the land for the taxes paid by him in good faith.

Appeal from Superior Court, Kittitas County.—Hon. FRANK H. RUDKIN, Judge. Modified.

*L. A. Vincent,* for appellant.

*Graves & Englehart,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—Action to remove cloud, quiet title, and obtain possession of certain real estate in Kittitas county. A decree was entered in favor of the defendants by the court below. Plaintiff appeals. The facts are as follows: Prior to the year 1900 the appellant was the owner of the land in question. This land is located in what is known as the "Middle Kittitas Irrigation District," organized under the act of March 20, 1890. In the year 1899, upon the neglect and refusal of the board of directors and other officers of the said Middle Kittitas irrigation district to assess and levy taxes to pay the accruing interest upon outstanding bonds theretofore issued by the said district, the board of county commissioners of Kittitas county levied a tax for such purpose upon the lands in controversy and other lands in said district. Bal. Code, § 4187. These taxes upon appellant's land became de-

linquent, and thereafter, on March 8, 1900, the said lands were sold to pay these taxes. After the year for redemption had expired, a deed was issued to the purchaser, J. W. Witherop, who thereafter sold the lands to respondents, who took possession thereof, and still retain the same. The deed issued to Witherop was not placed of record. On February 18, 1902, and prior to the commencement of this action, the appellant, in order to protect its title, paid the treasurer of Kittitas county the sum of $917.55 (being the general state and county taxes then due and delinquent upon the land), and also paid the further sum of $94.09 (being irrigation district taxes due since the sale of the land to Witherop). Other facts necessary to an understanding of the points involved will be stated hereafter. It is conceded that the title and right of possession of respondents are based upon the tax deed issued upon the sale for delinquent taxes for the irrigation district. It is contended by appellant that this deed is void for four reasons: (1) That the Middle Kittitas irrigation district was not organized according to law, because the petition for organization did not contain the names of fifty freeholders; (2) that the lands were not sold according to law, because the officer making the sale did not designate in writing a part of the tract, less than the whole, which would be offered for sale; (3) that the lands were sold for a grossly inadequate price, and (4) that the deed was not filed for record in the office of the county auditor; that appellant was a *bona fide* purchaser of the lands, without notice of the claim of respondents. We shall discuss these points in the order stated.

1.   The statute, at § 4166, Bal. Code, provides:

"Whenever fifty or a majority of holders of title or evidence of title holding land susceptible of one mode of irrigation from a common source, and by the same sys-

tem of works, desire to provide for irrigation of the same, they may propose the organization of an irrigation district," etc.

The evidence shows that the petition for the organization of the district contained the names of but forty-two freeholders, and that this number was a majority of all the freeholders owning land within the proposed district. It is contended by appellant that in any event no less than fifty freeholders can institute proceedings to organize an irrigation district, and, since that number did not sign the petition to organize this district, therefore the organization thereof is void. There is no provision in the act of 1890 limiting the organization of these districts, unless it is found in the clause "whenever fifty or a majority of the holders of title" desire to organize such district they may propose the organization under the act. We think the legislature intended by this language to indicate that fifty freeholders, in any event, may institute proceedings to organize an irrigation district, and that the clause "or majority of the holders of title" refers to communities where fifty would not constitute a majority of the freeholders within the proposed district. To hold otherwise would be to say that no less than a majority in any case could institute such proceedings. Counsel for appellant cite us to the following cases from California: *Directors of Fallbrook Irrigation District v. Abila,* 106 Cal. 355 (39 Pac. 794); *In re Central Irrigation District,* 117 Cal. 382 (49 Pac. 354); and *In re Madera Irrigation District,* 92 Cal. 296 (28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106)—as sustaining his contention. The irrigation statute of this state is almost identical with the California statute known as the Wright Law. The supreme court of California held in those cases, in substance, that it was necessary for

fifty freeholders to sign the petition; but these were evidently cases where fifty was not a majority of the freeholders of the proposed district, and therefore came within the express provision requiring fifty freeholders. If the statute requires a majority of the freeholders to sign the petition, then fifty is not sufficient unless that number constitutes a majority. As we understand the California cases above cited, they do not support the appellant's contention, but are inferentially opposed thereto. The question presented here was not raised or discussed in either of those cases, and no case has been called to our attention where the precise question has been decided. Our statute, after providing for notice and a submission of the question of the forming of the district to an election by the qualified electors, who are also required to be freeholders, provides that the board of county commissioners shall canvass the returns, " and if upon such canvass it appears that at least two-thirds of all the votes cast are 'Irrigation district, yes,' the said board shall by an order entered on their minutes declare such territory duly organized as an irrigation district," etc. This provision of the statute amply provides for the protection of all persons interested, so that no advantage can be taken of any person owning property in the proposed district. While a minority may institute the proceedings in a large district, the majority controls the organization thereof. We think the legislature did not intend that in populous districts a majority was required in order to institute the proceedings; but, where less than fifty sign the petition, it must appear that the less number is a majority. It so appears in this case. Questions relating to the validity of the organization of this district have been before this court in three prior cases (*Board of Directors v. Peter-*

*son,* 4 Wash. 147, 29 Pac. 995; *State ex rel. Witherop v. Brown,* 19 Wash. 383, 53 Pac. 548; and *Kinkade v. Witherop,* 29 Wash. 10, 69 Pac. 339), and each time this court has upheld the organization. Upon the strength of these decisions large amounts of money have been invested in the bonds issued by the district. To now hold the organization thereof invalid upon a question which was suggested in at least one of those cases, but which was not deemed of sufficient importance to be discussed either by counsel or by the court, would in effect overrule all those cases, which we are not inclined to do.

2.    Section 4192, Bal. Code, provides:

"The owner or persons in possession of any real estate offered for sale for assessments due thereon may designate in writing to the secretary, prior to the sale, what portion of the property he wishes sold, if less than the whole; but if the owner or possessor does not, then the secretary may designate it, and the person who will take the least quantity of the land  .   .   .   is the purchaser."

The owner or possessor of the lands offered for sale in this case did not designate in writing or at all any portion of the land to be sold. The county treasurer, who sold the land in place of the secretary, did not designate any particular portion thereof in writing which he proposed to offer for sale, except that the record of the sale shows the following:

"The treasurer and collector aforesaid proceeded to offer the same for sale, designating the least quantity and the least portion of interest in the land that would be sold for the assessments and percentage which were by law a lien upon it, towit: He offered for sale at public auction separately each lot, parcel, or tract of land as herein below separately described, and at said auction, and upon said offers of sale, J. W. Witherop, the party of the second part hereto, was the bidder who was willing to take

the least quantity of, or smallest portion of interest in, each of said herein below described lots, parcels, and tracts of land, and pay the assessments and charges due on each of the same, and his was the highest and best bid for each of the said lots."

This was a sufficient designation. The statute does not require the secretary or person selling the land to file his designation in writing, as an independent paper and as part of the record of sale. If the owner desires only a portion of the real estate sold, then he must file with the secretary a written request to that effect, designating the portion. When no such request is made, the secretary may designate at the sale what parcels he will offer, or what portion of the parcels, and his return thereon will be held to be sufficient compliance with the statute. The sale appears, both by the record and the oral evidence, to have been sufficient in this respect. *Doland v. Mooney,* 79 Cal. 137 (21 Pac. 436) ; *Hewes v. McLellan,* 80 Cal. 393 (22 Pac. 287) ; *State ex rel. Schmoele v. Galloway,* 44 N. J. Law, 145 ; *Southworth v. Edmands,* 152 Mass. 203 (25 N. E. 106, 9 L. R. A. 118).

3.   The lands sold were bid in by the purchaser for a small fraction of their assessed or real value, but there is no showing of unfairness in the sale or want of statutory notice. All the requirements of the law were complied with. If mere inadequacy of price is held to be a valid objection to a sale for taxes, the collection of taxes in this manner would be greatly embarrassed, if not rendered altogether impracticable. In Black on Tax Titles (2d ed.) § 238, the correct rule is stated as follows:

"Where land is sold for taxes, the inadequacy of the price given is not a valid objection to the sale. This rule arises from necessity; for if a fair price for the land were an essential to the sale, it would be useless to

offer the property. Indeed, it is notorious that the prices habitually paid by purchasers at tax sales are grossly out of proportion to the value of the land."

4. Appellant lastly urges that the deed was not placed of record, and that it knew nothing of it, and therefore was an innocent purchaser. This position cannot be maintained in this case, because the land was not sold, nor the deed issued, until long after the appellant became the owner of the land. The appellant purchased the land in 1894. It was sold in 1900 for taxes levied in 1899. But after the deed had been issued, and before it was recorded, the appellant paid taxes upon the land to the amount of $1,011.64 in order to protect its own title. The trial court refused the appellant relief for the money thus advanced. In this respect the court was in error. The appellant paid these taxes in good faith, believing it was the owner of the land and entitled to the possession thereof. Under the authority of *Packwood v. Briggs,* 25 Wash. 530 (65 Pac. 846); *Denman v. Steinbach,* 29 Wash. 179 (69 Pac. 751), and *Burgert v. Caroline,* 31 Wash. 62 (71 Pac. 724), the lower court should have given appellant a judgment for the amount of the taxes, and declared the same a lien on the land for the payment thereof.

The judgment of the lower court is therefore modified in this respect, and the cause is remanded, with instructions to the lower court to enter a judgment in favor of the appellant against respondents for the sum of $1,011.65, with legal interest since February 18, 1902, and ordering the sale of said lands described in the complaint to satisfy the said judgment. In other respects the judgment is affirmed, with costs in favor of the appellant.

FULLERTON, C. J., and HADLEY, ANDERS and DUNBAR, JJ., concur.