[No. 20896.  *En Banc.*  June 20, 1928.]

## MRS. E. J. GRAVES, *Respondent*, v. HUGH M. LAWRENCE et al., *Appellants*.[1]

[1] WATERS AND WATERCOURSES (92)—IRRIGATION DISTRICTS—AS-
SESSMENTS—SALE FOR NON-PAYMENT.  An irrigation tax deed of
property worth $1,200, issued for a delinquent tax of $6.38 to
one who had been acting as agent for the vendor and the
purchaser of the tract, evidently to protect their interests, will
be cancelled where the owner had paid all previous assess-
ments and understood that a previous payment to the same
agent covered the tax in question, and the agent, after getting
the tax deed, refunded part of the previous payment, and
made demand for repayment of the tax paid, without specifying
the amount due (MITCHELL, MAIN, ASKREN, and FRENCH, JJ., dis-
senting).

Appeal from a judgment of the superior court for
Okanogan county, Neal, J., entered February 2, 1927,
upon findings in favor of the plaintiff, in an action to
quiet title against a sale of land for delinquent water
assessments.  Affirmed.

*Patterson & Davis,* for appellants.

*Wm. O'Connor,* for respondent.

PARKER, J.—The plaintiff, Mrs. Graves, commenced
this action in the superior court for Okanogan county
seeking the quieting of her title to tract 27, Orchard
View Addition to Tonasket, in that county, as against
the claims of the defendants, Lawrence and the White-
stone Land Settlement Agency, rested upon an irriga-
tion assessment deed issued to Lawrence by the trea-
surer of Okanogan county for a delinquent irrigation
assessment against that tract.  The Whitestone agency
was made a defendant upon the theory that Lawrence
was in its employ at all times in question and acting

[1]Reported in 268 Pac. 155.

in its behalf. The case, being of equitable cognizance, proceeded to trial in the superior court sitting without a jury and resulted in findings and judgment in favor of Mrs. Graves, in substance as prayed for, from which both Lawrence and the Whitestone agency have appealed to this court.

[1] The controlling facts, as we view this record, may be summarized as follows: During, and since, 1922, the Whitestone agency has been engaged in the real estate business, and as such acting as agent for the Bonaparte Land Company in the platting and sale of its Orchard View Addition tracts and other properties. At the same time, Lawrence was employed by the Whitestone agency, assisting in the running of its business, particularly in the collection and receipting for payments on purchases of tracts and payments to be applied on irrigation assessments and general taxes levied upon sold tracts. On October 23, 1922, W. A. Graves, for his mother, the respondent Mrs. Graves, entered into a contract in writing with the Bonaparte Company for the purchase from it of tract 27 of Orchard View Addition, to be paid for by installments. The negotiations leading up to the entering into of this contract were between Graves and the Whitestone agency as agent of the Bonaparte company. On February 6, 1923, in pursuance of that contract, the Bonaparte company executed its deed conveying to Mrs. Graves tract 27. At that time, while the plat of Orchard View Addition had been prepared, it had not been filed of record in the office of the county auditor; so, in the deed, the plat was referred to as "to be filed and placed of record in the office of the auditor of Okanogan county." This unrecorded condition of the plat seems to be the reason why Mrs. Graves and other purchasers were to pay taxes and assessments, as well as installments upon the purchase price, to the White-

stone agency for the Bonaparte company for the time being. The plat, we assume, was later placed of record in the auditor's office, though, as to when this was done, we are not advised.

On October 17, 1923, there was levied against tracts 27, 32 and 33 of Orchard View Addition a lump irrigation assessment for interest on irrigation bonds due in the year 1924 and maintenance during that year. About December 1, 1923, the Whitestone agency, by Lawrence, acting for the Bonaparte company, notified Mrs. Graves or her son and demanded payment of assessments and taxes claimed to be due or about to become due, just which it is not clear. On December 20, 1923, Mrs. Graves' son, in response to that notice, went to the office of the Whitestone agency and paid to Lawrence seven dollars, he giving to the son a receipt therefor, signed by the Whitestone agency, noting thereon the following: "General tax 1923, $3.00." "1922 water tax for use of water season of 1923, $4.00." The son, so acting for his mother, manifestly believed that he was then paying Lawrence the amount of the irrigation assessment which had been levied a short time before, evidently not knowing that that assessment was for 1924. On April 10, 1924, that assessment being unpaid and delinquent, the county treasurer issued to the irrigation district to which it was owing, a delinquency sale certificate No. 1656 for tracts 27, 32 and 33. The annual assessments thereafter levied were paid to the county treasurer by Mrs. Graves or her son, each of the receipts therefor having noted thereon: "Certificate of sale No. 1656 outstanding."

On January 30, 1926, the Whitestone agency, by Lawrence, returned to Mrs. Graves' son for her the sum of three dollars, acknowledging that that much of the seven dollars received by it from the son on

December 20, 1923, over two years previous, was erroneously demanded and received by it. On March 4, 1926, the irrigation district assigned to Lawrence its delinquency sale certificate for tracts 27, 32 and 33, Lawrence paying therefor the exact amount of the assessment for which the certificate was issued. The record leaves little room for doubting that Lawrence, in acquiring this certificate, acted for and intended to act for the Bonaparte company, the Whitestone agency and Mrs. Graves rather than for himself, with a view of ultimately acquiring title in himself alone to tract 27. On March 6, 1926, Lawrence wrote to Mrs. Graves the following letter:

"WHITESTONE LAND SETTLEMENT AGENCY
        "Tonasket, Washington
                                March 6, 1926.
"Eliza J. Graves,
        Tonasket, Washington.
"Dear Madam:
        "We have spoken to your son a couple of times regarding the water for season of 1924 on your tract in Orchard View Addition, advising him that the tax was unpaid and that the property might be sold for taxes.
        "Your son replied that the tax was paid, but I am positive it is not and you are urged to come to this office immediately and take care of the tax in order to protect your interests.
                                "Yours very truly,
                "WHITESTONE LAND SETTLEMENT AGENCY,
                                By Hugh M. Lawrence."

On March 12, 1926, Lawrence, still acting and intending to act, as we think, in the interests of all parties, including Mrs. Graves, presented the delinquency sale certificate, that is, as to tract 27, apparently tracts 32 and 33 having been redeemed, demanded and received from the county treasurer an irrigation assessment deed conveying to Lawrence tract 27 in consideration of $6.38, that being assumed to be

the amount of the delinquent assessment then due against tract 27. Thus Lawrence acquired the irrigation assessment deed from the county treasurer for the consideration of $6.38, purporting to convey to him tract 27, which was then, with the improvements thereon, of the value of at least $1,200. While the evidence tends to show that Lawrence, on some two or three occasions, had told Mrs. Graves or her son that there was probably an unpaid irrigation assessment against tract 27, he did not advise them that he had acquired the delinquency sale certificate. He also did not advise them of the amount of any such assessment, and did not demand payment thereof from them. He also did not advise them of the mistake, in demanding and receiving from them the three dollars for general tax, until more than two years after receiving it. On March 23, 1926, very soon after Mrs. Graves and her son discovered the actual execution of the irrigation assessment deed to Lawrence, she commenced this action seeking its cancellation.

The judgment of the trial court decreed, in substance, cancellation of the irrigation assessment deed issued to Lawrence and the quieting of title to tract 27 in Mrs. Graves as against the claims of Lawrence and the Whitestone agency thereto, except as their claim thereto may be regarded as a mere lien upon tract 27; the court decreeing as a condition of quieting Mrs. Graves' title, as against the claims of Lawrence and the Whitestone agency, that she pay to the clerk of the court for them the $6.38 assessment for which the irrigation assessment deed was issued, together with interest thereon at six per cent from the date of the issuance of the deed; and also pay the costs of this action in the superior court. Under all the circumstances here shown, we are of the opinion that this decree is as favorable to Lawrence and the Whitestone

agency as they are entitled to. We think this case was properly decided by the trial court in favor of Mrs. Graves, conditioned as in its judgment, upon the theory that Lawrence took title to tract 27 by the irrigation assessment deed in trust for Mrs. Graves, subject to the charges awarded by the judgment.

The judgment is affirmed, and the cause remanded to the superior court for such further proceedings as may be necessary looking to the protection of the Whitestone agency and Lawrence in the money award made by the judgment in their favor. Mrs. Graves is awarded her costs incurred in this court.

FULLERTON, C. J., TOLMAN, HOLCOMB, and BEALS, JJ., concur.

MITCHELL, J. (dissenting)—I have read the whole record in this case twice, once after each of two hearings in this court, and in material respects have different views of the case from those expressed in the majority opinion. The Whitestone Land Settlement Agency, for whom H. M. Lawrence acted as bookkeeper, was agent for the owner of about thirty acres of land that was platted as Orchard View Addition to Tonasket and put on the market in 1922, the plat being filed in February, 1923, as the proof shows. Prior to the filing of the plat in the county auditor's office, many of the tracts were sold under real estate contracts or deeds naming the tract and reciting "according to the map or plat thereof to be filed and placed of record in the office of the auditor of Okanogan county, Washington," as was done in the conveyance of tract number 27, which is involved in this controversy. Tract number 27 was purchased by the respondent, or by her son for her, and a payment made on the purchase price October 23, 1922. Lawrence was not connected with the Whitestone Land Settlement Agency

until December 12, 1922. Respondent received a deed to the property on February 6, 1923. In filing the map or plat in February, 1923, the owner was required to and did pay all taxes and assessments then due on the total property. Thereafter the real estate agency notified prior purchasers, including the respondent, of the amounts to be paid by them to reimburse the agency or owner for the taxes and assessments that had been paid. It was under such notice that the respondent by her son, G. M. Graves, made the payment of seven dollars on December 20, 1923.

Of this transaction the majority opinion says:

"About December 1, 1923, the Whitestone Agency, by Lawrence, acting for the Bonaparte Company notified Mrs. Graves or her son and demanded payment of assessments and taxes claimed to be due or about to become due, just which is not clear."

Assessments and taxes *to become due* were clearly not in the minds of the parties. Lawrence testified that he wrote asking respondent to reimburse the appellant agency for taxes and assessments it had paid out on filing the plat in February of that year. Respondent's son, who made the payment to reimburse the agency, testified that he got the letter written to his mother and on December 20, 1923, "I went in and told him I was there to pay whatever was due and water assessments." The receipt for the money paid is found on a printed form and is as follows:

"December 20, 1923.
"Received from E. J. Graves (paid by G. M. Graves) general tax 1923—$3.00—1922 water tax for use of water season of 1923—$4.00
Seven & no/100...........................Dollars.
$7.00          WHITESTONE LAND SETTLEMENT AGENCY
                              "Hugh M. Lawrence."

The receipt is clear and legible. It is specific and certain as to its several items. It contains no sugges-

tion of the payment for any assessments or taxes due in the future.  The record shows that the assessment levied for irrigation in the year 1924 was not due or payable until January, 1924, and there is not an inkling of proof in the whole record that I can find that any of these parties knew on December 20, 1923, what that assessment was.

It appears that when the deed was delivered, February 6, 1923, Mrs. Graves gave a mortgage in a small amount on the tract to the Bonaparte Land Company from whom she purchased the tract, and the matter passed entirely out of the agency of the appellants.

Thereafter, other than the payment of seven dollars to reimburse the owner or its agent for prior taxes and assessments, and a subsequent correction as to the collection of the general tax of three dollars included in the seven-dollar payment when the error was discovered, relations between the respondent and the appellants ended.  That was the only transaction that ever took place between them.  There was no understanding or suggestion that thereafter the appellants or either of them should have anything whatever to do with the matter, nor any request that the appellants or either of them should look after the payment of future general taxes or taxes due the irrigation district, or the collection of the mortgage or interest on the mortgage that had been given by Mrs. Graves to the Bonaparte Land Company.  These parties took the position of strangers in business matters, neither obligated to the other.  The respondent or her sons thereafter paid to the treasurer general taxes on the property and other property that they owned.  They did not·pay the irrigation district assessment for water used in the year 1924; but they did pay such assessments to the treasurer for water used on this property for the years 1925 and 1926, and on each of the

statements and receipts for those years there was printed a notice from the treasurer's office that irrigation certificate of sale number 1656, covering this lot 27, was outstanding. That certificate of sale was on account of delinquency in the payment of assessments to meet bond interest and maintenance and operation costs and expenses for the year 1924. No attention was paid by the respondent or her sons to the notice on the statements of 1925 and 1926 of the outstanding certificate of sale for the year 1924.

. It appears that one of the sons of respondent became interested in tracts 32 and 33 of Orchard View Addition to Tonasket and that the irrigation assessment payable in 1924 for interest on bonds and the use of water for that year on all three tracts, 27, 32 and 33, was made in a single assessment in the name of the son as owner. The son allowed tracts 32 and 33 to revert to the original owner, the Bonaparte Land Company. About February 20, 1926, the Whitestone Land Settlement Agency, upon checking the records of the irrigation district with regard to lands belonging to its principal, the Bonaparte Land Company, discovered record notice of the certificate of sale number 1656, covering these two lots, 32 and 33, together with respondent's lot number 27, and in order to save its own two tracts was compelled to, and later did, take an assignment that covered tract number 27 also, as all three lots were assessed in a lump sum. Thereupon the Whitestone Land Settlement Agency at different times, through two of its officers and also through appellant Lawrence, notified respondent that the irrigation district assessment for the use of water in 1924 had not been paid, and if not attended to she would lose her land. The trial court so found. The respondent, through her sons, by whom she attended to much of her business, told the appellants that they

had receipts covering all the years, including the receipt of December 20, 1923, and exhibited them, and, in effect, that they would hold appellants responsible if the seven-dollar receipt of December 20, 1923, did not protect respondent against the irrigation district assessment for use of water in 1924. At that time Lawrence, in the presence of disinterested persons, explained that the receipt of December 20, 1923, was for water used in the year 1923, and that it said so on its face and that it in no way referred to or covered the year 1924, for which the delinquency was outstanding. Within a few weeks, Lawrence took an assignment of the certificate of sale in order to protect other property.

The majority opinion says that, according to the record, Lawrence in acquiring this certificate or assignment acted, or intended to act, for the respondent. With all due respect to that opinion, I am compelled to say that I can find nothing in the record to support that view. There was no such understanding or duty, direct or implied. True, the president of the respondent agency testified that he had no doubt that Lawrence would have taken her money after his purchase of the certificate, if she had tendered it. But that may be admitted, and yet it must be held that such reservation, if any, created no obligation, legal or equitable. On March 6 he wrote the letter set out in the majority opinion, and thereafter, not hearing from the respondent, he took a deed from the county treasurer to tract number 27, and in doing so was in no way acting or intending to act for or on behalf of the respondent, nor was he in any way obligated to her, from anything I can find in the record.

It is intimated in the majority opinion that he should have informed the respondent that he held the assignment and should have demanded payment, stating the

amount. Why? He need not have said anything to her; however, he did write, referring to prior verbal notices he had given of his understanding of the treasurer's record and that, notwithstanding her son's opinion to the contrary, he, Lawrence, was positive the taxes had not been paid, "and you are urged to come to this office immediately and take care of the tax in order to protect your interest." That was the essential thing. Had she gone there and paid or tendered the amount, it would be a different story. Or, she could have gone to the county treasurer and paid it, of which her assessment receipts for the years 1925 and 1926 gave her notice. But she and her sons would not do either.

As I understand the record, the misunderstanding of the respondent and her sons arose because of the fact that, in each of the irrigation district assessments paid by her, the statement and receipt showed an *assessment* of a certain year for payment to be made the following year for bond interest and maintenance and operation expenses that *following* year, as the irrigation law requires. Thereupon they decided to hold appellants responsible for the irrigation tax for use of water in 1924 on account of the receipt she had taken on December 20, 1923. But, as already stated, that receipt is as plain as it can be, and this record shows that, instead of the appellants or either of them doing or saying anything to cause such misunderstanding on the part of the respondent or her sons, they thoroughly explained the terms of the receipt, having it before them when the matter was being discussed in February, 1926, and further explained to them that, under the law, the irrigation assessments were made one year for payment and to meet expenses and charges the following year.

This is a case of alleged fraud, and none has been proven. The only semblance of a finding by the trial court approaching that charge was in the nature of a conclusion, manifestly carrying out the court's oral statement, at the end of the taking of evidence, that "the courts are not going to sanction any proposition such as this that property worth $1,200.00 should go for $6.00." That rule, however, is not applicable in this kind of case.

In almost every kind of transaction, other than matters of public revenue and taxation, courts of equity will promptly consider the question of the inadequacy of the price for which property is purchased and, if it alone or with other circumstances indicate an unconscionable bargain, will grant relief. But out of the rule of necessity, uniformly recognized in the absence of statute, the law as to tax sales is as declared in *National Bank of Commerce v. Davies*, 112 Wash. 106, 191 Pac. 879, as follows:

"We have so often held that mere inadequacy of price is not sufficient to justify the setting aside of a tax sale that there is no occasion to again discuss the subject. *Rothschild Bros. v. Rollinger*, 32 Wash. 307, 73 Pac. 367; *J. K. Lumber Co. v. Ash*, 104 Wash. 388, 176 Pac. 550."

It may be stated, that the case of *National Bank of Commerce v. Davies, supra*, was one in which the sale of property valued at $1,500 to pay an irrigation assessment of $2.20 was sustained.

In my opinion, the judgment should be reversed, and the action dismissed.

MAIN and ASKREN, JJ., concur with MITCHELL, J.

FRENCH, J. (dissenting)—After a careful examination of the entire record, I concur in the opinion of Judge Mitchell.