(57 App. Div. 323.)

## WILSON v. SANGER.

(Supreme Court, Appellate Division, Third Department.  January 9, 1900.)

1. TENANCY IN COMMON—TAXES—PAYMENT BY CO-TENANT—CONTRIBUTION.

Under the statute providing that an owner of an undivided interest in nonresident land may pay his share of the tax on the whole tract, and thereby relieve his interest from the tax, such an owner, who has paid the tax on a share of a co-owner without any request therefor, cannot recover the amount so paid from such co-owner.

2. SAME—JUDGMENTS—RES ADJUDICATA.

In partition between plaintiff's assignor and defendant's grantor judgment was entered setting off to plaintiff's assignor, on account of the inferior quality of the lands, a larger number of acres than was in proportion to her undivided interest.  At the time of the judgment taxes of a previous year were due on the various parcels forming the entire tract, but no provision was made in the partition proceedings for the extra taxes thrown on plaintiff's assignor by the additional allotment to her.  Defendant's grantor paid such taxes only on the acreage allotted to him, whereby plaintiff's assignor was forced to pay more than her proportional share of the taxes to release her lands.  Later, application was made by plaintiff's assignor, at the foot of the partition decree, to amend it by requiring the parties thereto to pay the unpaid taxes on the premises before the partition in proportion to their respective interests, which application was denied without prejudice to the bringing of such action as plaintiff's assignor might be advised, but without giving the reason for the court's action.  *Held,* that an action to recover such extra payment for taxes by plaintiff's assignor was barred by the decree in the partition suit, since compensation to plaintiff's assignor for such payment might have been made in that suit, and the fact that the order refusing to modify the decree was made without prejudice to an action would not enlarge the right of action.

Appeal from special term, Franklin county.

Action by Fred P. Wilson against William T. Sanger.  From a judgment in favor of plaintiff, defendant appeals.  Reversed.

Plaintiff's assignor and defendant's grantor, being tenants in common of lands, had a partition suit, in which, on account of the inferior quality of the lands, a larger number of acres were set off to plaintiff's assignor than was proportional to her undivided interest.  At the time of partition there were taxes of a previous year due on the various parcels forming the entire property, all the lands having been assessed at the same value per acre, but no provision was made in the partition proceedings for the extra taxes plaintiff's assignor would have to pay by the additional allotment to her.  Defendant's grantor paid such taxes only on the acreage set off to him, whereby plaintiff's assignor was forced to pay $86.36 more than her proportionate share of the taxes on the entire tract set off to her, and brought suit to recover that amount, among other taxes paid by her.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Charles E. Snyder, for appellant.

Badger & Cantwell (John P. Badger, of counsel), for respondent.

KELLOGG, J.  For some years prior to November 20, 1896, the defendant and plaintiff's assignor each owned an undivided interest in certain wild or nonresident lands, being township 23 and the triangle in the Adirondacks;  the entire tract so owned being about 36,000 acres.  The interest of plaintiff's assignor, Elizabeth Copeland,

was an undivided $^9/_{128}$ part of each lot embraced in said tract. The entire tract was subdivided into lots, and numbered from 2 to 226, both inclusive. Each lot was separately assessed, and upon each lot a separate tax was levied in each year. In 1894, and presumably each year prior thereto, each owner of an undivided interest remitted to the state comptroller his proportionate share of the taxes upon all the lots based upon each owner's share of the land, and apparently each so paid his share without consultation with or reference to any other owner. In 1893, Mrs. Elizabeth Copeland, plaintiff's assignor, commenced an action in partition which proceeded to conclusion and judgment signed November 20, 1896, and entered of record December 8, 1896. By this decree the plaintiff in the action (Mrs. Copeland) had set off to her lots 8, 9, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 30, 31, 40, 41, 42, 43, 44, 45, 46, 48, 49, 50, 51, and 52, and thereby her undivided interest in all the lots was severed and extinguished. In 1895 a tax was levied, as usual, upon each separate lot, which was not paid, and was returned to the comptroller. This tax was not considered in the partition action, and at the time of the decree remained upon each lot as assessed, and by the decree the several lots set off to Mrs. Copeland were severally burdened with a definite sum in taxes. So, also, was each of the other lots set off to other owners, and the sum for which each lot was so burdened did not greatly vary in amount. On November 20, 1896, another tax was levied in the same way. It appears that Elizabeth Copeland, plaintiff's assignor, on October 18, 1897,—about 11 months after the date of the judgment in partition,—remitted to the state comptroller, to apply on taxes levied in 1895, the sum of $247.04, that being $^9/_{128}$ of the aggregate of taxes upon all the lots in said tract; and it appears that the comptroller applied this remittance in reduction of the sum of such aggregate taxes. Such application in effect reduced the taxes on defendant's lands by the sum of $229.42. The balance of the sum remitted went to the reduction of taxes on the lots set off to Elizabeth Copeland by the partition action. It is not claimed that such payment or application of the $247.04 was requested by or known to the defendant, nor is it claimed that the application of such payment was other or different from the instruction of Elizabeth Copeland at the time the payment was made. It is fair to presume, however, that she expected by such remittance that her share of the taxes of 1895 would be discharged. It appears that she did not direct the comptroller to apply the money in discharge of the taxes on the lots set off to her, although each lot was separately assessed and separately taxed. The mistake, if there was one, could not have been made by Elizabeth Copeland in ignorance of the fact that she was at the time of such payment not the owner of an undivided interest in the land, nor of the fact that each lot had its separate burden of taxes. At any rate, there is no evidence that she was ignorant of any of these facts. The plaintiff brings this action to recover from defendant the $229.42 which was applied to the reduction of taxes assessed upon the lots in said tract owned by defendant and set off to him by the judgment in partition of November, 1896. The theory by which the learned counsel for plaintiff seeks to work out his right to re-

cover seems to be this: The land, when the tax was levied (1895),
was undivided. The tax levied against each lot created an obliga-
tion on the part of the owners—a joint obligation—to pay the tax,
and plaintiff's assignor, as one of the joint obligors, had then the
right to pay the whole tax, and afterwards call upon the other owners
for contribution, and in equity enforce contribution. That the par-
tition of 1896, which put an end to ownership in common, did not
sever the joint obligation to pay the taxes levied before partition,
and payment afterwards by one of them, an owner only in severalty,
carried with it the right to enforce contribution. Unless this theory
is sound, I see no ground whatever to base this right of action upon,
for it is admitted that the tax was paid voluntarily, and without the
request or knowledge of defendant. But the theory does not bear
examination, and is obviously unsound. There was no joint obliga-
tion to pay the tax, and no necessity existed for one of the owners
in common at any time to pay the whole tax in order to protect his or
her undivided interest. The statute provides that an owner of an
undivided interest in nonresident land may pay his proportionate
share of the entire tax, and relieve his share from sale and from the
tax burden. The tax is against the land, and not against the owners.
It is in rem, and enforceable only against the land itself. To say
that an owner of any small undivided interest in nonresident land
might lawfully pay the entire tax, and by so doing possess a right
to enforce contribution in equity against the other owners person-
ally, would, in effect, give him the power to change a tax in rem to
a tax in personam. There is lacking here every essential element
which is needed to create the right to equitable contribution. If, at
first sight, there appears to be a moral obligation here, the com-
plete answer to that is contained in the maxim, "Æquitas sequitur
legem." The other owners of undivided interests may not, for many
good reasons, wish the tax levied upon their interest paid. They
may, for instance, believe the land not worth the taxes assessed; and,
since there is no legal obligation bearing upon them personally, may
prefer that their interest in the lands be sold. This imposes no
hardship upon any owner of an undivided interest who wishes to pro-
tect his interest, as we have seen. It may, therefore, be safely said
that, in the absence of a request, express or implied, and in the ab-
sence of a necessity or of a statute creating the right, there can exist
no right to maintain an action for contribution by one owner against
another owner of an undivided interest in nonresident lands for taxes
voluntarily paid thereon.

But the fact which this record presents takes this case quite be-
yond the necessity of determining the rights of co-tenants in nonresi-
dent lands touching the payment of taxes. The plaintiff's assignor
paid the $247.04 nearly a year after her interest in the lands had
been set off to her in severalty. The lots set off to her each had its
own burden of tax, specific in amount, assessed thereon separately in
1895; and so, also, had each of the lots set off to defendant. Both
as to the land set off to defendant and the taxes thereon the plaintiff's
assignor was, therefore, at time of making payment, a stranger. She
could not interfere either with the lots set off to defendant or with

the burden with which each was charged. The defendant had the exclusive ownership. He had the right to pay the taxes on his lots when and in the way he chose, or not pay them at all. He had the right to pay on some of the lots, and let others go to sale as not worth the taxes, or for any other reason. And for the plaintiff to have interfered, and have paid a sum applied pro rata on all of his lots, without his knowledge, in no way gave to her a right of action to recover against him personally. The plaintiff says that the payment was made through mistake. It was not the mistake of the defendant. The payment was not made to the defendant. He is under no obligation to correct the mistake. He places no obstacle in the way of its correction. The land, in equity, may be her debtor, but not the defendant. If the plaintiff, with the aid of the comptroller, can restore the tax which plaintiff's assignor inadvertently extinguished, the defendant might have no cause in equity to complain. It seems that in December, 1898, an application was made by plaintiff's assignor to the special term of the supreme court for an order at the foot of the decree in partition to amend the same "by inserting a provision therein to the effect that the taxes unpaid upon the said premises before the partition thereof be paid by the respective parties according to their respective rights and interests." The order was denied, without prejudice to plaintiff's bringing an action against Sanger or any other person, as she might be advised. This probably related to the claim set out in the complaint in this action for the sum of $86.36, which plaintiff alleges was in excess of her $9/128$ proportion of the taxes, that the amount of acreage set off to Elizabeth Copeland was in excess of $9/128$ of the whole, and carried with it an excess of the taxes levied in 1895. Without doubt this matter might have been and should have been determined in the partition action. It might have been equalized by giving to Elizabeth Copeland, the plaintiff in that action, more land, or by imposing upon the other owners the payment of a sum of money, or it might have been determined by the court or the commissioners appointed to make partition that the land set off to her was sufficient, with the burden of taxes assessed; but the defendant here, William T. Sanger, was not a party to that action. It probably might have been adjusted by amendment upon the motion made in December, 1898. Why it was not does not appear. Whether the motion was denied because of laches from long delay, or because of a change of ownership in the land, is not apparent. The order "without prejudice to an action" does not enlarge the right of action. If none then existed, none certainly was then created. There was no appeal from the order, and I am inclined to think the matter must be regarded as res adjudicata. The judgment in partition is final on the subject.

There seems to be no way to avoid the conclusion that the judgment of the special term was erroneous. The judgment of the special term should be reversed, with costs. All concur.