[No. 7220.　Decided April 1, 1909.]

ELMIRA L. STONE, *Appellant*, v. ELLEN M. MARSHALL *et al.*,
*Respondents.*[1]

JOINT TENANCY—PUBLIC LANDS—PATENT AFTER ABOLISHMENT—
HUSBAND AND WIFE—COMMUNITY PROPERTY—DESCENT AND DISTRI-
BUTION. A tract of land patented by the United States government
to two married men in the state of Washington, after the enact-
ment of the community property law of this state, is the common
property of the parties and their wives, and is not held under a
joint tenancy, with the right of survivorship, and upon the death
of one of the patentees, his interests descend to his wife and chil-
dren under the laws of descent, and not to the surviving owner.

TENANCY IN COMMON — TAXATION — REDEMPTION — PURCHASE OF
CERTIFICATE BY CO-OWNER. The purchase of a tax certificate by a
joint owner of land, has the effect of redemption from the tax sale,
and inures to the benefit of the co-owners.

SAME—PAYMENT OF TAX BY CO-OWNER—LIEN. A co-owner, by
payment of taxes against the entire estate, acquires a lien for a
just proportion of the taxes paid, but cannot acquire a tax title to
the exclusion of co-owners.

EQUITY — ESTOPPEL — LACHES — QUIETING TITLE. The claim of
laches in bringing an action to quiet title cannot be made by a
co-owner who knew that the plaintiffs were in ignorance of the
title and interest of their ancestors, and who never took any posses-
sion of the land or gave any notice of his claim thereto.

Appeal from a judgment of the superior court for King
county, Neterer, J., entered August 15, 1907, upon findings
in favor of the defendants, after a trial on the merits, in an
action to quiet title. Affirmed.

*Ballinger, Ronald, Battle & Tennant (J. L. Corrigan,* of
counsel), for appellant.

*Eugene A. Childe,* for respondents.

FULLERTON, J.—On May 2, 1870, the United States pat-
ented to S. B. Hinds and C. P. Stone, under the act of Con-
gress of April 24, 1820, entitled "An act making further
provision for the sale of public lands," forty acres of land

[1]Reported in 100 Pac. 858.

in King county, described as "the northwest quarter of the southeast quarter of section two, in township twenty-three, north of range three east in the district of lands subject to . sale at Olympia, Washington Territory." At the time of the issuance of the patent, both Hinds and Stone were married men, living with their wives at Seattle, in the then territory of Washington. Hinds died intestate on December 14, 1870, without having conveyed or otherwise disposed of his interest in the property. He left as his heirs at law his widow and three daughters, the eldest of the daughters being then seven years of age. The widow and daughters removed from Seattle to the state of California shortly after the death of Mr. Hinds, and never after that resided in the territory or state of Washington. Mrs. Hinds, after her removal to California, married one J. H. Marshall, with whom she lived until her death on December 8, 1892. Mrs. Marshall left no heirs other than the daughters of herself and Mr. Hinds, above mentioned, and to these daughters she devised her property. It does not appear from the record, however, that she had any knowledge of her first husband's interest in the land in question here. The patent was in the possession of C. P. Stone until it was recorded at his request in the auditor's office of King county on April 15, 1904, long after her death. Neither of the daughters had any actual knowledge of the existence of the patent, or of their father's interest in the property described in it, until after the commencement of this action.

Mr. Stone was divorced in 1872 from the wife he had at the time of the patent, and married the appellant some two years thereafter. The land at the time of its purchase by Stone and Hinds was unoccupied timber land, and has never been in the actual occupancy of any one. All of the acts of ownership that have been exercised over it subsequent to the death of Mr. Hinds were exercised by Mr. Stone. He sold the timber growing upon it at one time, and it is in evidence that he occasionally visited the place, but no perma-

nent improvements, or improvements of any kind, were ever placed thereon by him, or any one. It was assessed for taxes in 1882 as the property of "Hinds & Stone," and sold for nonpayment at the annual sale of lands for delinquent taxes for the year 1893. One W. H. Gleason became the purchaser of the property at the sale, and received a certificate of purchase to that effect. On November 12, 1890, he assigned the certificate to one A. E. Hanford, who the next day assigned the same to C. P. Stone. From that time until the year 1905 the land was assessed to C. P. Stone and he paid the assessments annually. The record fails to show any assessments for other years. No demand was ever made by C. P. Stone on the heirs of S. B. Hinds for their proportion of the taxes due, nor did they voluntarily offer to pay any part thereof until after the commencement of this action, when they tendered a sum equivalent to one-half of the amount so paid.

C. P. Stone died testate in Seattle, September 14, 1906, and thereafter letters testamentary were issued to his widow, Elmira L. Stone. Mrs. Stone thereupon brought this action in her own right and as the executrix of her husband's estate to quiet title to the lands described, averring that the property was acquired by her husband and herself by purchase on November 14, 1890, and that the same became and was their community property; further averring that the respondents claimed some interest therein as the heirs at law of S. B. Hinds, which constituted a cloud upon her title. Issue was joined on the complaint, and a trial was had which resulted in findings to the effect that the respondents were the successors in interest of S. B. Hinds, and the owners of an undivided half of the property; that the tax title of the appellant was invalid and a cloud upon the respondents' title; that the respondents were not guilty of laches; but that the appellant was entitled to contribution for one-half of the taxes paid, and entered a decree accordingly. This appeal is from that decree.

The first contention of the appellant is that the patent from the United States to S. B. Hinds and C. P. Stone created in them an estate in joint tenancy, with all the incidents such an estate had at common law, including the right of survivorship, and that, in consequence, Stone succeeded to all of the interest Hinds had in the property at his death, leaving no interest therein to pass to his wife or to be inherited by his heirs. In support of their contention, counsel call attention to the earlier territorial statutes which expressly refer to estates held in joint tenancy, and to the statute of 1885, by which the right of survivorship in such estates was expressly abolished. But without following the argument in detail, we are clear that the interest of Hinds in these lands at the time of his death did not descend to Stone by right of survivorship. The lands were acquired by Stone and Hinds after the enactment of the community property statutes, or common property statutes as they were then called; and the land when purchased became the common property of Stone and Hinds and their wives, and was never held by them in joint tenancy. Laws 1869, 318; 5 U. S. Stat. at Large, p. 566. On the death of Hinds, therefore, his interest in the land passed to his widow and children under the statute of descents of the then territory of Washington, and did not pass to his co-purchaser named in the patent.

It is next insisted that Stone acquired all the interests of the respondents by virtue of his purchase of the tax certificate after the land had been sold for delinquent taxes. But this purchase was in effect nothing more than a redemption from a tax sale, and inured to the benefit of all of the co-owners.

"It is a general rule, founded on the requirements of good faith, that any one interested in land with others, all deriving their titles from a common source, cannot acquire an absolute title to the land by a tax deed, to the injury of the others." *Woodbury v. Swan*, 59 N. H. 22.

See, also, *Shepard v. Vincent*, 38 Wash. 493, 80 Pac. 777;

*Finch v. Noble,* 49 Wash. 578, 96 Pac. 3. Doubtless under
the rule in this state, Stone by the payment of the tax as-
sessed against the entire estate acquired a lien on the re-
spondents' interests for their just proportion of the taxes so
paid, which he could have foreclosed by a suit in equity;
*Burgert v. Caroline,* 31 Wash. 62, 71 Pac. 724, 96 Am. St.
889; *Spokane v. Security Savings Society,* 46 Wash. 150,
89 Pac. 466; but he could not and did not acquire the re-
spondents' interests by suffering the land to go to sale for
the taxes and buying the land at the tax sale.

The appellant further contends that the respondents' claim
to their father's and mother's interest in this land is stale
and inequitable. This contention is based upon the fact
that no assertion of right in the property was made by the
respondents from the time of their father's death until after
the commencement of the action. But the appellant is not
in a position to assert this fact as a bar to the respondents'
interests, even were the plea available if made by a stranger.
The appellant and her husband, knowing, as they must have
known, that the respondents were ignorant of their interests
in this property, owed them the duty either to inform them
directly of their interests, or take such open and notorious
possession of the property as to make it clear that they were
claiming against all the world; and in the absence of proof
that they did one or the other of these things, a court of
equity will not allow them to appropriate the respondents'
interests because of delay on the respondents' part in as-
serting such interests. There was here no possession at all
on the part of the appellant or her testator, much less was
there such a possession as would of itself imply an adverse
holding of the property. *Cox v. Tompkinson,* 39 Wash. 70,
80 Pac. 1005.

The judgment appealed from is affirmed.

ALL CONCUR.