[No. 27796.   Department One.   May 2, 1940.]

D. E. WALLACE, *Respondent*, v. BEULAH V. HENDERSON
et al., *Defendants*, WALTER D. SANGSTER *et al.*,
*Appellants.*[1]

*Elmer E. Halsey* (*Butler & Madden,* of counsel), for
appellants.

*Roy A. Redfield,* for respondent.

[1]Reported in 101 P. (2d) 1078.

MAIN, J.—The plaintiff was the owner of two real estate mortgages and brought separate actions to foreclose them. The superior court entered an order combining the two actions for all purposes. After the trial to the court without a jury, the parties involved agreed upon an adjustment of one of the actions. As to the other, the court made findings of fact from which it was concluded that the defendants Walter D. Sangster and Grace Sangster, his wife, were not entitled to the relief, by way of subrogation, that they sought. From the decree denying this relief, they appeal.

The facts are somewhat complicated and not easy to state in such a way as to make the situation readily understandable. James Sangster and Jennie Sangster, his wife, were the owners of eight hundred acres of land in Asotin county. In 1932, Mr. Sangster died. Shortly after his death, Mrs. Sangster conveyed all of the property to their two children, W. D. Sangster, one of the appellants, and Beulah V. Henderson, a daughter. To the daughter was conveyed the northeast quarter and the south half of the northwest quarter, all in section 22, township 8 north, range 45 E. W. M. To the son, W. D. Sangster, was conveyed the southeast quarter and the east half of the southwest quarter, in the same section. To him was also conveyed the southwest quarter of section 23 and the northwest quarter of section 26. So far as the record shows, the mother had no other property. She was advanced in years and in very poor health.

The land had all been mortgaged, and, to some extent, the mortgages overlapped. What is referred to as the John Hancock mortgage, securing an indebtedness of four thousand dollars evidenced by a promissory note, covered the west half of the northeast quarter, the west half of the southeast quarter, and the east half of the southwest quarter, all in section 22. Another mort-

gage was one to The Lewiston National Bank of Lewiston, Idaho, for seventy-five hundred dollars, which covered the entire eight hundred acres. A third mortgage to the Prudential Life Insurance Company, securing an indebtedness of ten thousand dollars, covered only the southwest quarter of section 23 and the northwest quarter of section 26.

Beulah V. Henderson and Roy M. Henderson, her husband, gave a mortgage to D. E. Wallace, the respondent, securing an indebtedness of $10,622.11, evidenced by a promissory note, and this mortgage covered the entire tract which had been conveyed to the daughter. It was junior to the Hancock mortgage and to the bank mortgage. Wallace purchased the Hancock mortgage, paying full value therefor, and also the bank mortgage, paying the balance due on the indebtedness. These purchases were apparently made to enable Wallace to protect his mortgage, which, as stated, was junior to the other two. Thereafter, W. D. Sangster paid the balance due on the bank mortgage, and it was released upon the record. His purpose, apparently, in doing this was to free the east half of the southeast quarter of section 22 from the lien of the bank mortgage, in order that he might include that in a mortgage to the Prudential for an increased loan.

For a considerable number of years, W. D. Sangster had operated the entire farm and had purchased all the farming equipment from his father. After the deeds were made, it was the desire of both Beulah V. Henderson and her brother, W. D. Sangster, to pay off these mortgages as rapidly as possible. The arrangement between the two was that the brother should continue to operate the farm, and, after paying the operating expenses, apply the proceeds upon the indebtedness. W. D. Sangster operated under this arrangement, but did not segregate the income from the portion of

the land conveyed to his sister from that conveyed to him. Apparently, the understanding between them was that the income should all be applied to the liquidation of the indebtedness, and, after that was accomplished, the brother was to deliver to his sister either one-third of the crop produced upon her land or the proceeds thereof. Upon this question, the trial court made this finding:

"As between brother and sister, the arrangement was that no income from the land given to the Hendersons was to be enjoyed by them until the John Hancock mortgage and the Bank mortgage had been paid; Walter was to carry the burden of these mortgages, made in the father's lifetime, to the extent of applying the proceeds of crops produced upon the lands mortgaged, toward the liquidation of the respective mortgages. . . ."

W. D. Sangster and his wife sought to be subrogated and given a lien with the same rank as the bank mortgage, owned by Wallace, had previously had. This is the request for subrogation which the court denied, and presents the controlling question in the case.

The right of subrogation applies in cases where a party who has an interest in the property and who does not stand as a mere volunteer pays a debt owing in whole or in part by another, to protect his own rights or to save his own property. The remedy is not limited to sureties or quasi-sureties, but is applied by courts of equity in all cases where good conscience and equity dictate that a debt paid by one under any sort of legal compulsion ought to be paid by another. *Murray v. O'Brien*, 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998.

The test by which the right of subrogation is determined is found in the inquiry as to whether the equities of the parties are equal. If they are not, the

right of subrogation does not exist. 2 Jones on Mortgages (8th ed.), 874, § 1393.

In the case now before us, the note to the bank was signed "W. D. Sangster, Grace Sangster, James Sangster, Jennie Sangster." It thus appears that the Sangsters, so far as the bank and its assignee Wallace were concerned, were primarily obligated to pay the indebtedness.

We now come to the question of whether the equities of Beulah V. Henderson and her brother were equal. As already appears, the brother received five hundred and sixty acres, together with what is called the Home place upon which the buildings had been erected. Beulah had received two hundred and forty acres. As already pointed out, the brother was to farm the lands as he had done before. There was to be no segregation of the income produced on the respective holdings of the two parties until after the indebtedness upon the Hancock mortgage and the bank mortgage had been paid. The farm was operated under that arrangement, and the brother was to pay the indebtedness from the proceeds of the entire farm. Under this arrangement, we think it cannot be said that the equities were equal, and, for this reason, the right of subrogation and apportionment did not exist.

Upon the oral argument, in this court and in the briefs some questions were discussed which have not herein been mentioned, but, in view of the holding indicated on what appears to us to be the controlling question, the other questions are not material.

The decree appealed from will be affirmed.

BLAKE, C. J., MILLARD, ROBINSON, and SIMPSON, JJ., concur.