[No. 27762. *En Banc.* July 11, 1940.]

JOHN G. OLSON *et al., Appellants,* v. SARAH ELIZABETH CHAPMAN *et al., Respondents.*[1]

[1]Reported in 104 P. (2d) 344.

*Scott, Langhorne & McGavick,* for appellants.

*Delos Spaulding,* for respondents.

SIMPSON, J.—Plaintiffs instituted this action to recover a personal judgment for amounts, with interest at ten per cent, which they and their predecessor in interest had paid in taxes on defendants' interest in certain real property owned by plaintiffs and defendants as tenants in common, and to have the same declared to be a first lien against defendants' interest in the property.

The complaint alleged the payment of taxes upon the property for many years, and that the payments were made to protect the interest which plaintiffs had in the property. Defendants denied the allegations of the complaint and, by an affirmative answer, alleged that the action was not begun within the time limited by statute. The cause was tried to the court and judgment rendered in favor of defendants. Plaintiffs have appealed.

The claims of error will be noted as we proceed.

The historical facts and circumstances, as disclosed by the record, may be narrated as follows: Prior to December 19, 1913, defendant J. L. Reese and his wife, Martha Katherine Reese, were the owners of the land in Lewis county upon which this lien is sought. On that date, they contracted to sell an undivided one-third interest therein to Olaf G. Olson. Mrs. Reese died February 2, 1917. July 5, 1917, Reese conveyed to Olaf G. Olson his community interest in the undivided one-third interest in the property. Olson died Novem-

ber 24, 1924. August 6, 1925, Reese, as administrator of his wife's estate, conveyed her community interest in the undivided one-third share in the property to Jennie Olson, administratrix of the Olaf G. Olson estate.

August 21, 1925, a two-thirds interest in the real property was distributed to respondents (excepting J. L. Reese). The estate of Olaf G. Olson was distributed to appellants.

Subsequent to entry of the decree of distribution in the Olson estate, a bookkeeper discovered, among the effects of Olaf G. Olson, papers showing that, September 9, 1920, Olson redeemed a certificate of delinquency issued by the treasurer of Lewis county for unpaid taxes on the real estate in question, and that he had continued, until his death, to pay annually the full amount of taxes subsequently levied against the property.

December 6, 1938, appellant John G. Olson was appointed administrator *de bonis non* of the Olaf G. Olson estate and authorized to prosecute this action.

The evidence of tax payments made by Olaf G. Olson was found in an old envelope left by him. The certificate of redemption showed that he paid the full amount of taxes levied on the property for the years 1915 to 1919, inclusive, with accrued interest, totaling $278.98. Tax receipts made out to him for the full amounts levied for the years 1920 to 1923, inclusive, totaled $130.87.

Appellants also introduced in evidence tax receipts for the years 1925 to 1928, inclusive, totaling $484.94. These payments were made by Jennie Olson as administratrix of the Olson estate and later as trustee of the interests of appellants. In view of the fact that it was admitted by appellants that respondents repaid two-

thirds of the amount levied for that year, taxes for the year 1924 are not involved in this appeal.

Respondent J. L. Reese testified that he had repaid to certain unnamed and unidentified persons, assumed by him to be agents of Olaf G. Olson, two-thirds of the amounts paid by Olson for taxes levied for the years 1920 to 1924, inclusive, and for 1926, but that his receipts had been stolen. No evidence was introduced showing contribution to have been made by respondents for amounts paid in redeeming the certificate of delinquency, or for payment of the full amount of taxes for the years 1925 to 1928, inclusive, other than those for 1926.

June 1, 1929, after his interest in the property had passed to the other respondents, J. L. Reese gave to Jennie Olson, as trustee, his non-negotiable promissory note in the sum of $802, intended by appellants to represent all of the taxes paid by the Olsons on the two-thirds interest in the property, which they believed to be still owned by J. L. Reese. To secure payment of the note, Mr. Reese executed a mortgage in the same amount upon the realty in question. Five interest payments on this note, each in the amount of $32.08, are admitted to have been made by respondents.

The trial court, in a memorandum opinion, gave as his reasons for finding in favor of respondents that the redeemed certificate of delinquency was not produced at the trial, information concerning it being secured from a ledger entry in the books of Olaf G. Olson; that no mention was made of the claim against J. L. Reese in the probate of the Olaf G. Olson estate; that the claim was barred for not having been timely presented in the Martha Katherine Reese estate proceedings, she being sole owner of the two-thirds interest at her death; that the statute of limitations had run against the note and mortgage executed by J. L. Reese,

against any money judgment which might have been obtained against respondents, and against any other claim which appellants assert with respect to payment of the taxes; that the taxes upon the Olsons' undivided interest in the real property could have been segregated; and that there was no duty imposed upon appellants, or their predecessors in interest, to pay the taxes upon the interest now held by respondents.

This action being equitable in nature, it is triable *de novo* in this court. *Schultz v. Kolb*, 189 Wash. 187, 64 P. (2d) 79.

We will first consider the questions of whether the tax payments upon which appellants base their action were, in fact, made by them and their predecessors in interest, and whether repayment in terms of the two-thirds interest now owned by respondents was effected. There can be little doubt that the Olsons paid the taxes. In any event, the payments alleged were conclusively proven by evidence introduced in the trial court. We note in this connection that the certificate of redemption, mentioned in the trial court's memorandum opinion as not having been produced, was admitted into evidence along with the tax receipts for succeeding years.

As we have already pointed out, the only evidence introduced by respondents with reference to repayment was the testimony of J. L. Reese relating to the taxes for the years 1920 to 1924, inclusive, and for the year 1926. This testimony was denied by appellants.

J. L. Reese admitted payment by the Olsons and the absence of repayment by himself when he executed the note and mortgage June 1, 1929. When asked why he gave the note and mortgage, he stated:

"Well, simply because I know the heirs didn't have the money to pay it—to pay the taxes at the time and

I give the mortgage to relieve them until they could see fit to pay it."

Mr. Reese testified that he thought the amount represented by the note covered taxes only from the year 1925. Upon this basis, the total of taxes and interest for the four years in question would have amounted to over $1,200. It is difficult to understand how Mr. Reese, familiar as he claimed to be with the payment of taxes on the property, could have intended to obligate himself for the amount of $802 for two-thirds of only four years taxes when the annual levy on the property had averaged less than $35 prior to 1926, less than $150 since then.

Mr. Decker, agent for Jennie Olson in these negotiations with Reese, testified that he showed the latter an itemized statement covering all the taxes paid by the Olsons to that date. This memorandum was put in evidence by appellants. Reese was unwilling to deny categorically that he had seen the statement. Although Reese claimed to have made two-thirds repayment for the 1926 taxes, it is conceded that the two-thirds interest in the property had then passed to the other respondents. Further, the 1926 taxes were among those which he testified were, to his understanding, included in the amount represented by the note.

Respondents' approval of the action of J. L. Reese in the giving of the note is indicated in that they made five semi-annual interest payments thereon. The conduct of J. L. Reese and of the other respondents with respect to the note and mortgage directly rebuts the effect of the presumption of payment arising from lapse of time.

The burden was upon respondents to prove payment to Olson or the representatives of his estate. *Palmer v. Parker,* 91 Wash. 683, 158 Pac. 1017; *First International Bank v. Rockey,* 117 Wash. 663, 202 Pac.

268; *Folco v. Sorenson,* 127 Wash. 291, 220 Pac. 821; *Zioncheck v. Hepden,* 144 Wash. 272, 257 Pac. 835; 48 C. J. 680, § 176. We are unable to find from the record evidence sufficient to establish that respondents repaid the amounts expended for taxes.

■ It is contended by respondents, however, that the note and mortgage given by J. L. Reese discharged the original obligation. In this connection, it must be observed that the mortgage was worthless, for the reason that Reese did not own an interest in the real property at the time the mortgage was executed and delivered.

In like cases, we have held that the taking of a note for a preexisting debt does not discharge the obligation unless there is an agreement to that effect. *American Sav. Bank & Trust Co. v. Helgesen,* 67 Wash. 572, 122 Pac. 26, Ann. Cas. 1913A, 396; *Blenz v. Fogle,* 127 Wash. 224, 220 Pac. 790.

In the latter case, it is stated:

"It seems to be the settled law of this state, in harmony with the views expressed by other courts of this country, that the giving of a negotiable promissory note for a preexisting debt owing by the payor to the payee does not discharge the preexisting debt and create a new debt independent thereof, as between the original parties, in the absence of an agreement between them to that effect, and that the burden of showing such an agreement rests upon the one asserting it. *Walsh v. Cooper,* 10 Wash. 513, 39 Pac. 127; *Moon Bros. Carriage Co. v. Devenish,* 42 Wash. 415, 85 Pac. 17, 7 Ann. Cas. 649; *Carlson Bros. Co. v. Weidauer & Lansdown Shingle Co.,* 69 Wash. 161, 124 Pac. 397; *Globe Express Co. v. Taylor,* 61 Colo. 430, 158 Pac. 717; *Cranston v. West Coast Life Ins. Co.,* 63 Ore. 427, 128 Pac. 427; *Way v. Mooers,* 135 Minn. 339, 160 N. W. 1014; *Leschen & Sons Rope Co. v. Mayflower Gold Min. & Reduction Co.,* 173 Fed. 855, 35 L. R. A. (N. S.) 1.

"In the last cited case, Judge Sanborn, speaking for the court, said:

" 'A clear agreement by the creditor that he will take the risk of the payment of the note, and that the debt is discharged thereby, or the indubitable intention so to do, is requisite to extinguish a debt by the taking of the debtor's note.' "

The principles announced are applicable in the instant case. The record does not disclose that the underlying obligation was intended to have been discharged by the taking of the note and mortgage. Respondents, as owners of the two-thirds interest in the realty, were bound to pay their proportionate share of the taxes which accrued from year to year. They should not be allowed, after permitting the payment of those taxes by their co-owners, to escape the burden of repayment by the giving of a worthless mortgage, or by failure of the payor of the taxes to use bookkeeping methods which would have disclosed more clearly to his survivors the facts relative to the indebtedness.

Appellants urge error on the part of the trial court in holding that they did not have such an interest in the property as would give them the right to pay the taxes and maintain their present action against respondents, and in holding that their rights in this respect have become unenforceable through the operation of the statute of limitations.

In view of the fact that this aspect of the case puts in issue an extensive, rather complex, set of problems relating to the general question of what sort of recovery, if any, can be had by one paying taxes on the property of another, we are impelled to attempt a somewhat detailed exposition of general principles, and of the manner in which they have found expression in the decisions of this court.

It is undoubtedly true that a mere stranger to the title to real property cannot invest himself with enforceable legal rights against the land, or its owner, by

the voluntary payment of taxes levied against it. On the other hand, it is well settled that the common law offers protection to him who pays taxes in order to protect a valid subsisting interest in real property, or a lien thereon, by providing for the enforcement of an equitable lien, for amounts so paid, against the interest of any person justifiably obligated to pay those taxes. Accord: *Farrel v. Gustin,* 18 Wash. 239, 51 Pac. 372; *Fischer v. Woodruff,* 25 Wash. 67, 64 Pac. 923, 87 Am. St. 742; see *Burgert v. Caroline,* 31 Wash. 62, 64, 71 Pac. 724, 96 Am. St. 889; compare *Denman v. Steinbach,* 29 Wash. 179, 69 Pac. 751; *Stone v. Marshall,* 52 Wash. 375, 379, 100 Pac. 858, 859.

This theory, bottomed upon the conviction that it would be unconscionable, under these circumstances, to permit the holder of the superior title to reap the benefit of tax payments, operating to discharge the land from liabilities for which he should have assumed responsibility, without requiring him to submit his interest therein to the reimbursement of the payor of the taxes, and complemented by the policy of the law which favors protection of those who advance the public interest by prompt payment of general taxes, was worked out through use of the equitable device of subrogation to the rights and lien of the state and county.

Upon the basis of similar reasoning, and through use of the real property analogy, we have allowed recovery of a lien against personal property for taxes paid by one not the owner thereof. *Dunsmuir v. Port Angeles Gas, etc. Co.,* 30 Wash. 586, 71 Pac. 9; see *Ray v. Hill,* 194 Wash. 321, 325, 77 P. (2d) 1009, 1011.

Early in the history of decided cases in this jurisdiction, this court committed itself to expansion of the common law rule stated above by extending similar relief to persons who, in the honest, but, in fact, erroneous belief that they held a valid interest in real prop-

erty, or a lien thereon, paid taxes on the property in order to protect that supposed interest.

Upon this basis, we have held that the payor of the taxes was entitled to a lien against the land for amounts so paid, with legal interest from the date of payment, where he claimed under a mortgage outlawed by the statute of limitations, *Fuhrman v. Power*, 43 Wash. 533, 86 Pac. 940; *Childs v. Smith*, 51 Wash. 457, 99 Pac. 304, 130 Am. St. 1107; 58 Wash. 148, 107 Pac. 1053; *Catlin v. Mills*, 140 Wash. 1, 247 Pac. 1013: where he asserted his right to pay the taxes upon the basis of a void judgment lien, *Packwood v. Briggs*, 25 Wash. 530, 65 Pac. 846; *Dalgardno v. Barthrop*, 40 Wash. 191, 82 Pac. 285; *Wheeler Co. v. Pates*, 43 Wash. 247, 86 Pac. 625; *Hemen v. Rhinehart*, 45 Wash. 1, 87 Pac. 953; *Dalgardno v. Trumbull*, 61 Wash. 659, 112 Pac. 928: where his claim to complete title and ownership was fatally defective, *Rothschild Bros. v. Rollinger*, 32 Wash. 307, 73 Pac. 367; *Ball v. Clothier*, 34 Wash. 299, 75 Pac. 1099; *Vietzen v. Otis*, 46 Wash. 402, 90 Pac. 264; *Vietzen v. Otis*, 63 Wash. 411, 115 Pac. 858; *Egbers v. Fischer*, 73 Wash. 308, 131 Pac. 1128; *Brownstin v. Brelle*, 3 Wn. (2d) 343, 101 P. (2d) 321: where his lien claim was based upon a certificate of delinquency for taxes levied for a year during which the property in question may have been exempt from taxation, *Foley v. Oberlin Congregational Church*, 67 Wash. 280, 121 Pac. 65: and where the city was attempting to protect a supposed prior local assessment lien, *Spokane v. Security Savings Society*, 46 Wash. 150, 89 Pac. 466.

In aid of the equitable lien theory, we have held, by construction of that portion of Rem. Rev. Stat., § 11265 [P. C. § 6882-104], which is analogous to the charter and general act provisions supplying the basis for our holding in *Port Townsend v. Eisenbeis*, 28 Wash. 533, 68 Pac. 1045, that the statute of limitations does not

run against the tax lien of one subrogated to the rights and lien of the county and state. *Denman v. Steinbach,* 29 Wash. 179, 69 Pac. 751; *Childs v. Smith,* 51 Wash. 457, 99 Pac. 304, 130 Am. St. 1107; 58 Wash. 148, 107 Pac. 1053; *Catlin v. Mills,* 140 Wash. 1, 247 Pac. 1013.

A limitation upon the application of the equitable theory of subrogation was expressed in *Wiswell v. Beck,* 92 Wash. 208, 158 Pac. 976, wherein we held that payment of taxes by mistake did not justify recovery of a lien against the interests of a subsequent bona fide purchaser of the property.

■ Statutes which, for our purposes, have been in operation in substantially their present form since enacted by the legislature in 1893, afford another possible source upon which the lien claimant can draw. Rem. Rev. Stat., §§ 11261, 11263, 11264 [P. C. §§ 6882-100, 6882-102, 6882-103].

Appellants base their action upon the provisions of §§ 11261 and 11263. These sections read as follows:

"Any person being the owner or having an interest in an estate or claim to real property against which taxes shall have been unpaid may pay the same and satisfy the lien at any time before execution of a deed to said real property. The person or authority who shall collect or receive the same shall give a certificate that such taxes have been so paid to the person or persons entitled to demand such certificate."

"When any tax on real property is paid by or collected of any occupant or tenant, or any other person, which, by agreement or otherwise, ought to have been paid by the owner, lessor or other party in interest, such occupant, tenant or other person may recover by action the amount which such owner, lessor or party in interest ought to have paid, with interest thereon at the rate of ten per cent per annum, or he may retain the same from any rent due or accruing from him to such owner or lessor for real property on which such tax is so paid; and the same shall, until paid, constitute a lien upon such real property."

Plainly, § 11261 can be discarded as inapplicable to the problem before us. Although it refers to payment of taxes by persons "having an interest in" or a "claim to" real property, § 11261 does not purport to make provision for the reimbursement of amounts so paid. Not only the measure of recovery, but a description of the class of persons for whom statutory recovery is available, is found in the provisions of § 11263. Whether or not appellants are entitled to the benefits provided for by statute, must depend upon whether they can qualify under the class described in the latter section.

Careful examination of all of the cases on this subject discloses that § 11263 has been cited in only four decisions. *Burgert v. Caroline*, 31 Wash. 62, 71 Pac. 724, 96 Am. St. 889; *Vietzen v. Otis*, 63 Wash. 411, 115 Pac. 858; *Wiswell v. Beck*, 92 Wash. 208, 158 Pac. 976; *Ray v. Hill*, 194 Wash. 321, 77 P. (2d) 1009. The last named case adds nothing germane to this discussion.

The *Burgert* case, *supra*, upon which appellants especially rely, is unique in that it provides the only instance in which we have held that the payor of taxes qualified under the class described in § 11263. Plaintiff in that case, in her capacity as guardian of the six minors among her eight children who owned the land as tenants in common, redeemed the land from a judgment of forfeiture for delinquent taxes. Having no funds in her possession as guardian, and the adult tenants in common having refused to contribute their shares, she paid the entire amount out of her own funds. It was held that plaintiff had shown herself to be entitled to recoup, under the statute, a proportionate share from each of the owners of the property. As the case came before the court upon demurrer, no mention was made of the rate of interest to be allowed.

While the holding in the *Burgert* case does not evidence any inclination to confuse the relief provided

for by statute with that allowed under the common law by use of the subrogation theory, it is yet apparent that the court was influenced by prior decisions granting the recovery of an *equitable* lien in determining whether plaintiff qualified under the class described by § 11263, and that the court undertook no detailed analysis of what persons were intended by the legislature to be included within that group.

We need not, however, consider that we are now bound by this aspect of the *Burgert* case. Our holding there with reference to the class of persons for whom relief is provided under § 11263 was, in effect, overruled by the later decision of this court in *Vietzen v. Otis*, 63 Wash. 411, 115 Pac. 858, an aftermath of the case by the same title reported at 46 Wash. 402, 90 Pac. 264.

In the prior action, title was quieted in plaintiff subject to a lien at the legal rate of interest for taxes paid by defendants under a mistaken but honest claim to ownership and title.

One of the contentions made by defendants in the second appeal put directly in issue the question of whether they were entitled to interest at the rate provided for under Rem. Rev. Stat., § 11263.

With respect to defendants' claim, we said:

"Appellants claim they come within this section and should recover ten per cent interest, while the court only awarded them interest at six per cent. This section covers payment of taxes by occupants or tenants, or other persons not claiming ownership in real property, but seeking to protect their possession or leasehold interest, in paying taxes that should have been paid by the owner, but because of whose failure to pay, the property becomes subject to a sale for unpaid taxes, under which the rights of the occupant or tenant might be terminated or interfered with, to prevent which the statutory lien is given. Appellants are not such as are here described. They paid these taxes as owners,

claiming ownership and title, and assuming primary liability for such payment. They did not pay another person's taxes to protect any interest they had by way of lease or occupancy, intending to assert a lien against the owner. They paid what they assumed to be the taxes on their own land, for their own benefit, and with no thought of seeking a repayment from others. Such being the evident purpose of the statute, and the intention of appellants in making the payment, the rule of *ejusdem generis* applies; appellants being neither occupants nor tenants, nor included in the statutory meaning 'any other person,' such designation referring to those and those only whose relation to the property is of the same nature as 'occupant or tenant,' or one whose relation to the property grows out of or is subject to superior title in the owner. That the court at the time of rendering its former judgment had this construction in mind, is evident from the language then used in awarding the lien, not as a statutory or legal right, but one resting alone in equity because paid in good faith under an invalid claim of ownership."

Appellants and their predecessors in interest did not purport to be occupants of the land nor tenants of respondents. Neither did they claim an interest subject to superior title in respondents. As tenants in common with respondents, appellants' title was not subservient to the interest held by respondents. In view of the language of the statute, and its interpretation in the above excerpt, we must conclude that appellants do not come within the class described in § 11263.

Neither can appellants supplement equitable relief, to which they may be entitled through application of the subrogation theory, by borrowing the additional rate of interest or the personal right of action made available under the provisions of § 11263. As is specifically pointed out in the quotation from the *Vietzen* case in *Wiswell v. Beck, supra,*—in fact, in the whole sequence of our decisions upon this subject,—the statutory liens provided for under § 11263 are separate and

distinct from those allowed by use of the common law device of subrogation to the rights and lien of the county. The equitable lien theory has been developed in its own right. It is wholly independent of the relief provided for by statute. The lien statutes are neither declaratory of the common law nor exclusive of the common law. *Childs v. Smith,* 58 Wash. 148, 107 Pac. 1053. While the relief for which provision is made under § 11263 complements, in a general sense, that which is allowed at common law, each stands alone, self-sufficient within its sphere.

In none of the remaining cases in this jurisdiction has recovery been allowed upon the basis of the statute, has a personal judgment against the holder of the superior title been granted, or has interest upon payments made been permitted in excess of six per cent per annum. On the other hand, it is apparent from what we have already said that appellants' failure to justify recovery under § 11263 does not prevent them from seeking the relief made available under the subrogation theory.

■ We have not before had occasion to determine whether a tenant in common is entitled under the subrogation theory to an equitable lien for taxes paid upon the interest of his fellow tenant. In addition to *Burgert v. Caroline, supra,* appellants invite especial consideration of *Stone v. Marshall,* 52 Wash. 375, 100 Pac. 858, wherein it was stated, in connection with a discussion of problems more directly in issue, that the payor of taxes, levied upon property jointly owned by the payor and another, was entitled to foreclose an equitable lien against the interest of his co-owner. Although the equitable lien question was not directly in issue, the *Stone* case does throw some light upon the position which this court has taken with respect to allowance of tax liens under the common law. In any

event, we are satisfied that a tenant in common of real property has an interest therein sufficient to entitle him to enforce an equitable lien for taxes paid upon the interest of his co-owner in an honest attempt to protect his own undivided interest in the land.

■ Respondents contend that appellants were not compelled to pay the taxes in order to protect their interest in the real property, but could, by virtue of Rem. Rev. Stat., § 11264, have compelled the county to segregate the tax. However, the provisions of that section are merely directory or permissive in character, but do not compel one who has an interest in real property to comply with its provisions or follow its directions.

We hold that appellants paid the taxes in the amounts claimed by them; that they did so in good faith in an honest belief that they were protecting their interest in the property; that they are subrogated to the rights of the county and state; that the statute of limitations does not apply; and that they are entitled to recover interest at the rate of six per cent per annum.

The judgment is reversed, with instructions to enter a decree foreclosing the lien in favor of appellants for the amounts paid for taxes together with interest from the respective dates of payment at the rate of six per cent per annum, less whatever interest respondents may have paid upon the promissory note executed by J. L. Reese.

BEALS, MILLARD, ROBINSON, JEFFERS, STEINERT, and DRIVER, JJ., concur.

BLAKE, C. J. (dissenting)—It is undoubtedly the rule that equity will establish a lien on land for the amount of taxes paid by one either to protect an interest of his own claimed in good faith or in fulfillment of a legal or equitable obligation to pay them to protect the interest of another. But, unless the payor falls within

one of the two categories, he is merely a volunteer, to whom equity will not lend its aid. See *Burgert v. Caroline,* 31 Wash. 62, 71 Pac. 724, 96 Am. St. 889, where the court said:

"It is elementary, of course, that one person cannot ordinarily make himself the creditor of another by paying, without request or consent, the debt of that other; and, applying this principle, it is generally held that a stranger to the title to real property cannot make himself the creditor of the owner of the property by voluntarily paying the taxes assessed against it."

The court further elaborated the rule in *Wiswell v. Beck,* 92 Wash. 208, 158 Pac. 976, where it said:

"In the instant case, there was no duty to pay these taxes imposed upon respondent by law or otherwise, as he was not the owner of the property at the time the taxes became delinquent or when paid by appellant, nor would he have accepted the property if he had known that there was a tax lien outstanding against it. . . .

"*Packwood v. Briggs,* 25 Wash. 530, 65 Pac. 846; *Burgert v. Caroline,* 31 Wash. 62, 71 Pac. 724, 96 Am. St. 889, and *Vietzen v. Otis,* 63 Wash. 411, 115 Pac. 858, are also relied on by appellant as authorities supporting the rule that the payer of taxes on the premises of another has a lien on the property therefor. These cases present situations where the person paying the taxes has some right or claim of ownership in the property and makes the payment for the purpose of protecting this claim or right, and not by mistake, and so far as the facts appear, the ownership was a continuing one or the vendee had notice of the tax lien claimed by the payer, and for these reasons are distinguishable. The whole theory of these cases, holding that the state's lien is transferred to the payer of taxes on property of which he is not the owner, is that the payer has performed a duty which was by law imposed upon the owner who neglected to perform it, and that no hardship will be worked on the owner in performing this duty to the payer who has performed his (the owner's) duty to the state."

Now, this rule is peculiarly applicable as between tenants in common in the light of Rem. Rev. Stat., § 11264, which, among others, contains the following provision: ·

"Any person desiring to pay on an undivided interest in any real property may do so by paying to the county treasurer a sum equal to such proportion of the entire taxes charged on the entire tract as interest paid on bears to the whole."

For, in the light of the statute, there is no legal obligation on the part of a co-tenant to pay taxes on the property as a whole. Nor is there such a fiduciary relationship existing between co-tenants, as such, to charge a tenant in common with the obligation to pay the taxes assessed against the property as a whole. 62 C. J. 419. Under such statutes, the courts hold that, since a tenant in common may have his interest separately assessed, he will not be permitted to establish a lien for reimbursement when he pays taxes assessed against the common property. 62 C. J. 490; *Wilson v. Sanger*, 68 N. Y. Supp. 124, 57 App. Div. 323; *In re Lohr's Estate*, 132 Pa. Super. Ct. 125, 200 Atl. 135. Indeed, some courts hold, in the absence of such a statute, that a tenant in common is not entitled to contribution when he pays taxes on the whole estate except in instances where he does so at the request of his co-tenant. *Preston v. Wright*, 81 Me. 306, 17 Atl. 128, 10 Am. St. 257; *Wistar's Appeal*, 125 Pa. 526, 17 Atl. 460, 11 Am. St. 917; *Schilbach v. Schilbach*, 171 Md. 405, 189 Atl. 432. In the *Preston* case, the court said:

"There are many cases where a person pays the whole amount of an incumbrance upon real estate under a legal liability jointly with others to do so, or where he is compelled to pay for others in order to save his own share from forfeiture, he may be entitled to an assignment of that incumbrance from the owner that he may hold and enforce it against the land for

his reimbursement. No case has been cited, nor are we aware of any which goes any farther. In all these cases it is an assignment or what is treated as such of an actual existing incumbrance, in which the assignee succeeds to all the rights of the assignor and none other."

And that is the rationale of our own decisions applying the doctrine of subrogation. *Murray v. O'Brien,* 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998; *Wallace v. Henderson,* 3 Wn. (2d) 697, 101 P. (2d) 1078.

I think the judgment should be affirmed.

MAIN, J., concurs with BLAKE, C. J.

[1]Reported in 104 P. (2d) 310.