[No. 28696. Department One. June 26, 1942.]

LU DELL ROBINSON, *Appellant*, v. ANDREW J. ROBINSON, *Respondent*.[1]

*Shorett, Shorett & Taylor,* for appellant.

*Colvin, Rhodes & Franklin,* for respondent.

[1]Reported in 126 P (2d) 1090.

DRIVER, J.—Plaintiff sued for an accounting of the rentals collected on certain real property owned by her deceased husband and the defendant as tenants in common. Defendant answered and cross-complained for expenditures made by him in the construction of a building on the premises and for repairs, upkeep, insurance, taxes, and assessments. Answering defendant's cross-complaint, plaintiff set up, as affirmative defenses, that defendant's claim was barred by the statute of limitations; that he had been repaid for his expenditures; and that, in the administration of the estate of her deceased husband, an order of the probate court setting aside decedent's undivided one-half interest in the real property to plaintiff, in lieu of her homestead rights, was "res adjudicata upon the Cross-complaint and the relief prayed for therein."

After a trial without a jury, the court found that defendant had expended the net sum of $1,024.93 for taxes and assessments, and entered its judgment and decree granting defendant a lien in that amount upon plaintiff's interest in the property, and directing that the lien be foreclosed. Plaintiff appealed.

Respondent was the only witness who testified at the trial, and there is no dispute as to the facts. In 1913 or 1914, the respondent and his brother, Charles D. Robinson (the husband of appellant), acquired the real property in controversy, an unimproved tract in Seattle, each of them taking an undivided one-half interest. The property remained unimproved until 1929, when respondent, at his own expense and with his brother's consent, had a building erected thereon. In the meantime, respondent's brother had moved to California, where he continuously resided until his death in July, 1938. In the probate of his estate, the decedent's one-half interest in the property was awarded to appellant as his surviving spouse in lieu of a homestead.

After the construction of the building, respondent collected the rentals and paid the taxes, assessments, repairs, and other necessary expenses of the property. He rendered no accounting to his brother or to appellant; and, as far as the record shows, none was requested until about the time of the commencement of the instant action.

The trial court found, and, in this regard, its findings are not questioned by the appellant, that respondent had expended for the construction of the building, for maintenance, repairs, insurance, and other like items, a total of $6,820.16, including interest at six per cent per annum. The court also found that respondent had collected rentals and for a sign space a total of $6,726.78, inclusive of interest. Therefore, the cost of the building and repairs exceeded the amount of rentals received by $93.38. The trial court further found that respondent had paid the additional sum of $2,049.86 for taxes and local improvement assessments, with interest at six per cent per annum, leaving a balance due respondent on the last-named items amounting to $1,024.93. The court then granted respondent a lien upon appellant's undivided one-half interest in the real property for such balance.

Appellant contends that the taxes and assessments should have been paid *first* from the rentals, then the upkeep of the property, the balance of the rentals to be applied to reimburse respondent for the cost of the building. Had that been done, the respondent's expenditures for taxes and assessments would have been repaid in full, and the unpaid balance of the cost of construction of the building, appellant asserts, would be only an unsecured claim against the estate of her deceased husband, and would not constitute a lien or charge upon the undivided one-half interest in the

property set aside to her in the probate proceedings. Appellant's contention is based upon a letter dated January 2, 1929, and written by respondent to his brother in California. The pertinent portions of the letter read as follows:

"I have a proposition to put up a Building on our Rainier Lots that sounds pretty good, for manufacturing. They want a 5 year lease & at the end of the 5 years the Building will be payed for. If satisfactory to you I will put up the Building & pay for it, & lease to the parties & the Taxes and Insurance will be paid out of the rent & at the end of the 5 years you will own 1/2 of the Building & it will be clear to you if nothing happened to the Rent, and I don't think that there will be any trouble about that. The Building will cost about

$4000.00 Building

280.00 Interest on money year
15.00 About Insurance
125.00  "    Taxes

420.00 A year Exp.
5

2100.00 Exp. for 5 years
4000.00 Building

6100.00

"The Building Interest & Taxes and Insurance will be about Sixty-one Hundred & I will get $100.00 a month Rent out of the Building, so you see in 5 years it will be clear. Then we should get a $110.00 a month out of it. . . . If you are satisfied write me at once & I think you have Title Insurance so you had better send it along to [too]."

No answer to the foregoing letter is in the record, but respondent testified:

"Q. Did you advise your brother about this [construction of the building]? A. Yes, sir; I asked him if it would be all right for me to erect a building to

take care of the expense that was against the building —taxes and everything. Q. Did your brother agree to that? A. Yes, sir."

Appellant quotes the opening paragraph of respondent's letter in her brief, and maintains that it established a trust, with respondent as trustee and his brother, Charles, as beneficiary, under the terms of which it was the duty of the trustee to pay the taxes and assessments from the rentals; and that, even if such duty had not been expressly imposed upon the trustee by the language of the letter, it, nevertheless, would have been his duty to apply the rentals (trust funds as to his brother's one-half interest) in the manner most beneficial to the *cestui que trust*; namely, in the payment of taxes and assessments.

If the letter created an express trust, it was only of a very limited and incidental character. Clearly, no trust was established as to the real property. The letter effected no change in the legal title. Respondent and his brother continued to hold the title as tenants in common. There was no provision for compensation of a trustee for his services in the care and management of the common property, and no compensation was ever requested or received by respondent. It may well be said that respondent became his brother's agent, not merely for the collection of the rentals, but with reference to the planning and construction of the building, the leasing of the property, and its maintenance and repair; and that any trust relationship which arose by virtue of respondent's collection and expenditure of his brother's half of the rentals was merely an incident of such agency. However, we do not consider it necessary to classify or definitely identify the relationship that existed between the parties, as we think that their mutual rights and duties were governed by contract— the contract which arose out of the offer or proposal

contained in respondent's letter of January 2, 1929, and its acceptance by Charles D. Robinson.

Construed as a whole, we think the intent and meaning of the letter is clear. Respondent proposed that he advance the necessary funds and arrange for the construction of a building, which he would lease to a prospective tenant, for a term of five years, at a monthly rental of $100, which rental was to be used to repay his advances, with interest, and to cover taxes and insurance costs. Respondent expressed the opinion that the rental for the term of the lease would be sufficient to repay his advances for the building, with interest, and the insurance and taxes. There was no mention at all of assessments, and, in the statement in the letter of the various amounts, aggregating $6,100, which were to be paid from the rentals, estimated taxes of $125 a year and insurance of $15 a year were comparatively minor items.

Respondent did not expressly agree to pay *first* the taxes and insurance from the rentals, nor do we think that any such agreement was implied, considering the letter as a whole. His statement that, in five years, the rents would repay the cost of the building, as well as defray current taxes and insurance premiums, manifestly, was only an expression of his opinion. That would be accomplished, he wrote, "if nothing happened to the rent, and I don't think there will be any trouble about that." As a matter of fact, there was trouble "about that." When the building was constructed, the depression was at hand. The tenant paid only three months' rent and then defaulted. No more rent was collected until 1933, and the property never again produced an income amounting to $100 a month. The five-year plan outlined in respondent's letter did not materalize, and the record indicates that Charles D. Robinson had notice to that effect.

There is in evidence a letter which respondent wrote to his brother May 9, 1930. The trial court concluded therefrom that respondent had been reimbursed for taxes and assessments which he had paid up to that time, and allowed him credit only for taxes and assessments which he thereafter paid. In orally announcing its decision at the close of the trial, the court commented on this letter as follows: "So, I think that we must infer from that that there was some rendering of accounts by the defendant [respondent] to his brother touching and concerning these instalments, and that there had been some payments."

We think that, under the circumstances, in the absence of any agreement or direction from his brother to the contrary, respondent had the right to apply the rentals to reimburse himself for his advances for the construction of the building before paying taxes and assessments which fell due after the advances had been made. It follows that, as the trial court found, respondent has paid (including interest at the legal rate) $1,024.93 in taxes and assessments on appellant's undivided interest in the real property in controversy, for which he has not been reimbursed. And, as the trial court concluded, as to such taxes respondent is subrogated to the rights of the county and the state and has an equitable lien against appellant's interest in the real property, which he is entitled to foreclose. *Olson v. Chapman*, 4 Wn. (2d) 522, 104 P. (2d) 344.

Respondent's equitable lien had attached prior to the entry of the order of the probate court awarding an undivided one-half interest in the real property to appellant in lieu of homestead, and was not discharged or affected by such order.

Judgment and decree of the superior court affirmed.

ROBINSON, C. J., MAIN, MILLARD, and SIMPSON, JJ., concur.